STATE v. JOE TATE.

(Filed 14 December, 1912.)

1. Murder—Threats—"Jest or Earnest"—Evidence—Premeditation —Manslaughter—Harmless Error.

Upon this trial for murder there was competent evidence of the prisoner's prior threat to whip the deceased: *Held*, it was competent for a witness in defendant's behalf to answer a question as to whether "he seemed to be in jest or earnest," not being objectionable as opinion evidence, but a statement of a matter of observation: and *Held further*, to be harmless error upon a conviction of manslaughter, as it was competent only as tending to show premeditation, which was not necessary to be established on a conviction for that offense.

2. Homicide—Dying Declarations—Harmless Error.

On this trial for murder there was evidence that the prisoner had cursed the deceased, threatened his life, told him he would kill him, fired the fatal shot, started to shoot again, but was begged by deceased to desist, as he had already killed him, shortly followed by death: *Held*, evidence of the declarations of deceased made after he had been shot, under the circumstances, is competent as dying declarations.

3. Murder—Secret Assault—Evidence—Instructions.

Upon this trial for murder there was evidence in behalf of the prisoner tending to show that after he had abandoned the fight and was walking away, the deceased began firing upon him: *Held*, the charge of the judge upon the principles of law

STATE *v.* TATE.

relating to a secret assault and the rights of the prisoner to pursue the deceased until he had secured himself from danger is approved.

4. **Murder—Instructions—Charge, How Construed—Harmless Error.**
    While it appears that in one part of the charge the court made the reasonable apprehension of danger to rest upon the evidence of the prisoner, upon his trial for murder, it also appears, taking the charge as a whole, that it was an inadvertence, which was corrected elsewhere and repeatedly stated, and no reversible error is found.    *S. v. Price*, 158 N. C., 650.

5. **Murder—Flight and Concealment—Evidence—Appeal and Error.**
    In connection with the other circumstances of this trial for murder, the flight and concealment of the prisoner, while it raised no presumption of law as to guilt, was held competent.

APPEAL by defendant from *Lane, J.,* at Spring Term, 1912, of CHEROKEE.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*Attorney-General for the State.*
*Witherspoon & Witherspoon, Dillard & Hill for defendant.*

CLARK, C. J. The prisoner was indicted for the murder of R. L. Thompson. He was found guilty of manslaughter, and appeals from the judgment sentencing him to the State's Prison for a term of two years. There was evidence that the deceased and the prisoner had a quarrel on the railroad about 2½ miles from Murphy. Witness Maddox testified that about 2 o'clock that day Tate bought a pistol and cartridges and wrapped them up in paper. Another witness testified that about 3 P. M. on the same day he heard Tate say that he was going to kill Thompson before the sun went down. Another witness testified that about 4 o'clock he overtook Tate, and that Tate showed him his pistol and said he was going to "get a man with it." Still another witness testified that he saw the parties in town that day and heard Tate say that Thompson, the deceased, had been telling lies on him; that he whipped him once and would whip him again. Four witnesses testified that they saw the difficulty in which the shooting occurred; that it was late in the after-

noon, as they were going home from work.  They said they saw
Thompson shoot at Tate and saw Tate pull something out of
his pocket wrapped up in tissue paper; it was at a railroad cut
near a curve; the witnesses ran around the curve as soon as the
shooting began, and they heard one or more shots shortly after.
Two of the witnesses, Stewart and Grant, testified that they
heard Tate ask Sudderth to whip the deceased, and Sudderth
testified that when Tate took the package out of his pocket the
deceased ran off about ten or fifteen yards; Tate subsequently
overtook the witnesses, and at that time had his pistol in his
hand.  Witness Francis testified that after the shooting Thomp-
son came to where he was standing, and blood was running down
his left hip.  Stewart also testified that Thompson came to
where he was standing and lay down against a big rock and had
blood on his hip.  Knobblett testified that he heard quarreling
at that time, one man calling another a lie and the other asking
some one to whip another, and then he heard a pistol shot and
the sound of feet running away.  He testified quite fully to
the altercation on that occasion.  The deceased was taken to the
home of the sheriff, and on the next day was operated upon and
died on the morning following.

The first two assignments of error are on the ground that the
court excluded the question whether when Tate threatened to
whip Thompson "he seemed to be in jest or in earnest."  The
court probably excluded this question, we presume, because he
deemed it an expression of opinion, though the reason is not
given.  But if that is the ground, we do not think his Honor
was correct.  It was a statement of a matter of observation.
*Britt v. R. R.,* 148 N. C., 37, and cases there cited.  But this
evidence, if admitted, would have been competent only as tend-
ing to show premeditation or malice, and as the defendant was
acquitted of murder and convicted only of manslaughter, the
error was harmless.  *S. v. Worley,* 141 N. C., 766; *S. v. Munn,*
134 N. C., 680; *S. v. Teachey,* 138 N. C., 598.

The exceptions to the admission of the dying declaration are
not well taken.  The evidence is plenary that the deceased stated
he "believed that he was going to die."  The deceased stated
that the prisoner came up behind him and charged him with

lying, and with an oath said, "I have got you where I want you, and I am a notion to kill you," and he held his pistol out in front of him and gritted his teeth.  Deceased then related the altercation and said the prisoner told him, "March up, damn you; march up.  I am going to kill you," and that he walked ten or twelve steps, and the prisoner shot him; that afterwards the prisoner came down where he was and said get up, and added with an oath, "I am going to kill you."  That he "begged him not to shoot and told the prisoner he had already killed him."  There was no error in the admission of the dying declarations.

. There were several exceptions to the failure to give prayers and to the charge, but practically there is but one exception that needs to be seriously considered.

The charge of the court was as follows: "As to the reasonableness of this apprehension under which the defendant acted, you are to be the sole judges, and to find from the evidence whether or not he acted from necessity or whether the danger actually existed, but it is sufficient if it reasonably appeared to be necessary; so if you find from the evidence that, at the time the shot was fired, the defendant had in good faith abandoned the fight and had retired, and that he found that unless he himself shot he would be killed, or would be in danger of great bodily harm, he himself being without fault, as I have said, you being the judges of the reasonableness of the apprehension, then it would be your duty to acquit the prisoner."

The above was not in the exact words, but in substance the prayer requested by the prisoner, and was a fair statement of the law applied to the facts of this case.

The court was requested to charge: "The prisoner contends that the deceased made the first assault upon him, with a deadly weapon, at a time when his back was turned, and when he had left the scene of the quarrel and started toward his home, and was ignorant of the purpose of the deceased to assault him with a deadly weapon and in a secret manner.  The court charges you that if you find from the evidence that Tate and Thompson, a short time prior to the killing, had been engaged in a quarrel, and that Tate had abandoned the quarrel and had

started toward his home, and that after he had gone some steps in the direction of his home, being ignorant of Thompson's purpose so to assault him, he was shot at by Thompson, this, under the law, was a secret assault and a felony, and the court charges you that if you find from the evidence that the deceased, Thompson, committed a secret assault upon Tate, as defined, and that at a time when Tate was not aware of his purpose, but when he started towards home, Tate had a right to oppose Thompson's purpose, as shown by his act, to the point of killing him, and he owed no duty to retreat, but had the right to pursue Thompson until he had secured himself from danger; and if the jury find that he did kill him under such circumstances, the court charges you that this would be excusable homicide, and it would be your duty to acquit him."

In response, the judge charged as follows: "Now, the prisoner contends, as I have said, that the deceased made the first assault, after he had turned away and had abandoned the quarrel, and was going towards his home, and that he was innocent of Thompson's purpose to assault him, and the court charges you that if you find that Tate had been engaged in a quarrel with Thompson, but that he had, in good faith, abandoned the quarrel, and had started toward his home, and that he had gone some in the direction of his home, but being innocent of Thompson's purpose to shoot him, and that he was then shot at by Thompson, that this under the law would be a secret assault, and would amount to a felony, and the court charges that if you find from the evidence that this was a secret assault, and that Tate was going away, and was innocent of Thompson's purpose to shoot him, and that he was on his way home and had abandoned any difficulty that had previously occurred, then Tate had the right to oppose Thompson's purpose, even to the point of killing him, if necessary, and then it would not have been incumbent upon him, if the circumstances were that way, to retreat, but he had the right to pursue Thompson until he had secured himself from danger, and if the jury find that he did kill him under such circumstances as that, it would be excusable homicide, and it would be the duty of the jury to acquit him.

"Now, the court charges you that if you find from the evidence of the prisoner that he acted under the reasonable apprehension that he was in danger, and was still being pursued by Thompson, who was still armed with a pistol, which is a deadly weapon, if he had abandoned the quarrel and was on his way toward home, the prisoner had the right to go to the length of taking his life, if necessary; you being, as I have said before, the judges of the reasonableness of the apprehension on his part."

We do not think that there was any substantial error. It is true that in one place the court said, "if you find from the evidence of the prisoner he acted under reasonable apprehension," etc., but the court did not confine the charge to the evidence of the prisoner. But at one place he charged, "If you find from the evidence that at the time Tate shot and killed the deceased he had a right to reasonably apprehend," etc. And again he charged, "If you find from the evidence," etc. And immediately preceding this portion of the charge objected to, the judge said, "If you find from the evidence," etc. If the instruction complained of was anything more than a mere inadvertence, which did not even attract the attention of the jury, it is amply cured by the whole tenor of the charge, which upon this and every phase of the testimony instructed the jury, "If you find from the evidence," etc. It is not the case of contradictory charges, but of a mere lapse or inadvertence, which was fully cured by the charge taken as a whole.

The whole subject is so fully discussed and the true rule fairly stated by *Walker, J.,* in *S. v. Price,* 158 N. C., 650, that it need not be repeated here, where he says: "A careful review of the charge satisfies us that the court fully responded to this request and instructed the jury substantially and in accordance with its terms. It is not required that the very language of a prayer should be used in giving the instructions asked for, but it is sufficient for the court to instruct the jury substantially as requested in its own words, provided—if the party is entitled to the instruction—its force is not weakened or its meaning materially altered by any change in the language. It is true, the court told the jury that the prisoners must have killed in

their necessary self-defense, but he explained to the jury what was meant by this expression in other parts of the charge, and substantially instructed the jury, in language that could not well have been misunderstood, that if the prisoners had reasonable apprehension, under the circumstances surrounding them, that they were about to suffer death or serious bodily harm, their act in slaying the deceased was excusable in law, and they should acquit the prisoner. The charge must be read and construed as a whole. *S. v. Exum*, 138 N. C., 600; *Kornegay v. R. R.*, 154 N. C., 389; *S. v. Lewis, ib.*, 632. When thus considered, it is a full and clear exposition of the law and is applicable to the facts." Taking this charge as a whole, we do not think the jury could have misunderstood the plain meaning of the judge, that they were to consider all the evidence in coming to their conclusions.

It was further excepted that the court admitted evidence as to the flight of the prisoner after the killing. But such flight or concealment of the accused, while it raised no presumption of law as to guilt, is competent evidence to be considered by the jury in connection with the other circumstances. 12 Cyc., 395; 21 Cyc., 941.

On consideration of all the exceptions, we think the prisoner has had a fair trial, in which the judge has committed no prejudicial error.

No error.

WALKER, J., concurs in result.