STATE OF NORTH CAROLINA v. GRADY DELANEY WINFORD

No. 110

(Filed 10 June 1971)

1. Criminal Law § 42; Evidence § 15; Homicide § 15— real evidence — proper identification

When real evidence (i.e., the object itself) is offered into evidence, it must be properly identified and offered.

2. Criminal Law § 42; Homicide § 20— knife found on deceased — identification

In this homicide prosecution, a small pen knife found on the body of deceased was sufficiently identified for its admission in evidence, although the proper procedure for introduction of real evidence was not strictly followed.

3. Criminal Law § 169— admission of evidence — evidence of like import admitted without objection — harmless error

Defendant in a homicide prosecution was not prejudiced by error, if any, in admission of a pen knife found on the body of deceased, where a police officer testified, without objection, that the pen knife was found on the person of deceased and described the knife in detail.

4. Homicide § 5— second degree murder defined

An unlawful killing with malice is murder in the second degree.

State v. Winford

5. **Homicide § 14— intentional use of deadly weapon causing death — presumptions**

   If the State satisfies the jury beyond a reasonable doubt that a defendant intentionally used a deadly weapon and thereby caused the death, the presumptions arise that the killing was (1) unlawful and (2) with malice, and nothing else appearing, defendant would be guilty of murder in the second degree.

6. **Homicide § 24— intentional use of deadly weapon causing death — erroneous instruction favorable to defendant**

   Erroneous instruction that the law raises two presumptions "when it is admitted or proven that defendant *intentionally killed* the deceased with a deadly weapon" was not prejudicial to defendant, since it placed upon the State the added burden of proving a specific intent to kill.

7. **Homicide § 28— instructions — use of deadly weapon to repel simple assault**

   Instruction that under ordinary circumstances the law justifies or excuses the use of a deadly weapon to repel a simple assault is erroneous.

8. **Homicide § 28— instructions — withdrawal from affray — self-defense**

   The evidence in this homicide prosecution did not warrant an instruction on the principle of the right to kill in self-defense which arises when a defendant at fault in bringing on a difficulty withdraws from the combat and so notifies the deceased.

9. **Homicide § 28— instructions — facts reducing crime to manslaughter — burden on defendant**

   Instruction in this homicide prosecution which placed the burden on defendant to show beyond a reasonable doubt facts which would reduce the crime from second degree murder to manslaughter constituted prejudicial error even though the court thereafter correctly and fully charged on the defendant's burden, since the jury may have acted upon the incorrect instruction.

10. **Criminal Law § 118— error in statement of contentions — necessity for objection**

    While objections to a statement of contentions ordinarily must be brought to the court's attention in time for correction, when the misstatement presents an erroneous view of the law or an incorrect application of it, counsel is not required to bring the inadvertence to the court's attention.

11. **Criminal Law § 118; Homicide § 23— instructions — contentions of State — use of "murder" in lieu of "manslaughter"**

    Instruction that the State contended that "defendant is guilty of murder in the second degree, or at least is guilty of murder" might have created some confusion in the minds of the jurors by the misuse of "murder" in lieu of "manslaughter."

---

State v. Winford

---

**12. Homicide § 24— instructions — proximate cause — self-defense**

    In this second degree murder prosecution, the trial court did not err in failing to instruct the jury that it should return a verdict of not guilty if the State had failed to satisfy it beyond a reasonable doubt that deceased came to his death as a proximate result of the pistol wound inflicted by defendant, or in failing to instruct that the jury should return a verdict of not guilty if the State had failed to satisfy it beyond a reasonable doubt that defendant was either guilty of second degree murder or manslaughter, where defendant had judicially admitted that deceased's death was proximately caused by a bullet inflicted by defendant, and the court correctly instructed the jury as to self-defense, the only defense or excuse presented by the facts of the case.

APPEAL by defendant from *Seay, J.,* 25 May 1970 Session of IREDELL Superior Court.

Defendant was charged in a bill of indictment with the murder of Clayton McCombs. When the case came on for trial, the solicitor announced in open court that he would try defendant for second degree murder or manslaughter, as the evidence might warrant. Defendant entered a plea of not guilty.

The State offered evidence tending to show that on the night of 18 January 1970 defendant and Clayton McCombs engaged in an argument at the Elks Club in Mooresville, North Carolina. McCombs left the club, and later in the evening, at around 10:00 o'clock, was sitting in the right-hand front seat of his automobile in front of the club with his wife and five children. Winford came to the automobile with a .25 caliber automatic pistol in his hand and opened the door on the driver's side. McCombs left the car and ran towards Winford. They "tusseled" to the highway, where several shots were fired and McCombs fell.

McCombs' brother-in-law, O'Neal Sanders, took the pistol from defendant and later delivered it to the police. It was stipulated that McCombs died from "bullet wounds fired from a pistol." Police officers found a small unopened pen knife in deceased pocket, which knife they described as being about three inches long when the blade was open.

Defendant offered evidence tending to show that he engaged in an argument with deceased at the Elks Club at about 9:00 o'clock p.m., and at that time McCombs threatened him with a long-bladed "Barlow" knife; that McCombs was taken

State v. Winford

out of the building by friends, but he kept trying to go back in the building. After about ten minutes defendant left the club by a rear door and returned to the premises about thirty minutes later to pick up his brother. As defendant walked up the driveway of the club, he asked O'Neal Sanders where McCombs was; whereupon McCombs answered, "Here I am," and jumped from his automobile, swinging a long-bladed "Barlow" knife. Defendant told him to get back, but deceased pressed the attack, cutting defendant's right hand. Defendant retreated, pulled his .25 caliber pistol, and shot it in the air, again telling McCombs to get back. Defendant backed down the driveway of the club, across the street to a ditch, where he fired the pistol, striking deceased, who fell into the road, still grasping the knife. Defendant fired a total of five shots. He denied opening the door of the automobile with pistol in hand. One of defendant's witnesses, however, testified that defendant did enter the car and that deceased's wife said, "Don't shoot him here with the chaps here." Whereupon, defendant backed out of the automobile and met deceased at its rear, where they began to fight.

Defendant's testimony was partially corroborated by the wife of deceased. The long knife described by defendant was not offered into evidence.

The State, in rebuttal, offered testimony contradicting Mrs. McCombs and, over objection, introduced the small pen knife previously described by the police officers.

The jury returned a verdict of guilty of second degree murder, and from judgment imposed defendant gave notice of appeal. Defendant's counsel was unable to procure a transcript of the trial proceedings from the court reporter, and obtained two extensions of time for serving the case on appeal. On 22 October 1970 defendant filed a motion for a new trial on the ground that he had been unable to obtain the transcript and that without it he could not properly prepare his appeal. Disposition of this motion and the manner of obtaining the transcript were detailed in the *per curiam* opinion at 278 N.C. 67, 178 S.E. 2d 777. This Court remanded the case to Iredell Superior Court to the end that defendant could, if so advised, perfect his appeal. Defendant duly perfected his appeal and the case was calendared and argued at the May 1971 Session of this Court.

*Attorney General Morgan, Assistant Attorney General Briley, and Walter E. Ricks III, Associate Attorney, for the State.*

*Collier, Harris & Homesley, by Richard M. Pearman, and Walter H. Jones, Jr., for defendant.*

BRANCH, Justice.

Defendant assigns as error the admission into evidence, over objection, of a small pen knife allegedly found on the body of deceased. Defendant argues that the State failed to lay the necessary foundation before offering the knife into evidence and that the trial judge failed to "adequately discuss the evidence as to the knife." The record shows the following:

COURT: Any further evidence from the State?

MR. STAGG: Yes, we'd like to offer into evidence State's Exhibit 7 and marked for identification, which is a pocket knife found on the body of the deceased, Clayton McCombs.

MR. HOMESLEY: Objection.

COURT: Overruled. State's Exhibit 7 is received into evidence.

MR. HOMESLEY: We take exception to that, your Honor.
EXCEPTION # 7

[1] Any evidence which is relevant to the trial of a criminal action is admissible. *State v. Macklin,* 210 N.C. 496, 187 S.E. 785. However, when real evidence *(i.e.,* the object itself) is offered into evidence, it must be properly identified and offered. *State v. Eagle,* 233 N.C. 218, 63 S.E. 2d 170.

In Stansbury, North Carolina Evidence, § 26, p. 47, it is stated:

" . . . Even if the evidence to be offered is a tangible object, such as a writing, a weapon, or a photograph, it must first be authenticated or 'identified' by a witness, and this can be done only by presenting the object to the witness and asking him if he recognizes it and, if so, what it is."

In instant case defendant testified that he shot deceased in self-defense because deceased was attacking him with a

long-bladed "Barlow" knife. The "Barlow" knife was not produced at the trial. Thus, the knife found on the person of deceased contradicted testimony of defendant and was relevant to the trial of this criminal action.

[2, 3] Although the procedures approved for introduction of real evidence were not strictly followed, the knife was sufficiently identified before it was offered. Even had there been error in the former introduction of the knife, it would not have been prejudicial since Police Officer Burnett testified, without objection, that the small pen knife was found on the person of deceased, and he described the knife in detail. The admission of evidence, over objection, where testimony of the same import has been previously introduced without objection, is ordinarily not prejudicial error. *State v. Jarrett,* 271 N.C. 576, 157 S.E. 2d 4; *State v. Creech,* 265 N.C. 730, 145 S.E. 2d 6.

The trial judge did not commit error in allowing the pen knife to be introduced into evidence.

Defendant assigns as error the Court's definition of second degree murder as contained in the following portion of the charge:

(C) When it is admitted or proven that the defendant *intentionally killed* the deceased with a deadly weapon, or that the defendant intentionally inflicted the wound which—with a deadly weapon, that directly resulted in the death of the deceased, the law raises two presumptions against the defendant. First of all, it raises the presumption that the killing was unlawful, and, second, the law raises the presumption that it was done with malice. And an unlawful and intentional killing with malice is murder in the second degree. And, when that is shown, the law places upon the defendant the burden of proof and to the satisfaction of the jury, not by the weight, the greater weight of the evidence and not beyond a reasonable doubt, but simply to the satisfaction of the jury, that legal provocation that will derive the term of "malice" and thus reduce it to manslaughter, or if it disproves it altogether on the ground of self-defense. (D)

Defendant EXCEPTS to that portion of the charge between (C) and (D).                    EXCEPTION # 9

(E) In an intentional killing, if it is established that the killing was from intentional use of a deadly weapon, then the defendant is guilty of murder in the second degree, unless he can satisfy the jury of the truth of the facts which justify his act and mitigate it to manslaughter. The burden is on the defendant to establish the facts to the satisfaction of the jury, unless they arrive out of the evidence, that he is speaking the truth. (F)

Defendant EXCEPTS to that portion of charge between (E) and (F).          EXCEPTION #10

As to the offense charged, (G) [I]f the defendant, out of anger, because of ill will or malice which he harbored against the deceased, unlawfully, that is without justifiable or legal excuse, intentionally shot the deceased with a .25 caliber automatic pistol, and killed the deceased, then the defendant would be guilty of murder in the second degree; and if the jury shall so find beyond a reasonable doubt, it would be the duty of the jury to return a verdict of guilty of murder in the second degree. (H).

Defendant EXCEPTS to that porton of charge between (G) and (H)          EXCEPTION # 11.

In determining the guilt or innocence of the defendant as to that charge, it is the duty of the jury to consider all of the evidence, facts and circumstances growing out of the evidence, if you find and—if you find from the evidence and beyond (I) a reasonable doubt that the defendant intentionally shot the deceased in the chest with a .25-caliber automatic pistol, a deadly weapon, and that he killed the deceased, or that the defendant intentionally, with a deadly weapon, inflicted the wound which resulted in the death of the deceased, he is presumed to be guilty of murder in the second degree. (J)

Defendant EXCEPTS to that portion of charge between (I) and (J).          EXCEPTION # 12.

[4]   An unlawful killing with malice is murder in the second degree. *State v. Mercer*, 275 N.C. 108, 165 S.E. 2d 328.

[5]   If the State satisfies the jury beyond a reasonable doubt that a defendant intentionally used a deadly weapon and thereby

caused the death, then two presumptions arise: (1) that the killing was unlawful, and (2) that it was done with malice; *and nothing else appearing,* the defendant would be guilty of murder in the second degree. *State v. Propst,* 274 N.C. 62, 161 S.E. 2d 560; *State v. Mercer, supra.*

The correct principles of law concerning these presumptions were stated in *State v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322, where Bobbitt, J. (now C. J.), speaking for the Court, stated:

> "When the killing with a deadly weapon is admitted or established, two presumptions arise: (1) that the killing was unlawful; (2) that it was done with malice; and an unlawful killing with malice is murder in the second degree. In *S. v. Gregory,* 203 N.C. 528, 166 S.E. 387, where the defense was that an *accidental* discharge of the shotgun caused the death of the deceased, it was stated that the presumptions arise only when there is an *intentional killing* with a deadly weapon; and since the *Gregory case* it has been often stated that these presumptions arise only when there is an intentional killing with a deadly weapon. But the expression, *intentional killing,* is not used in the sense that a specific intent *to kill* must be admitted or established. The sense of the expression is that the presumptions arise when the defendant *intentionally assaults* another with a deadly weapon and thereby proximately causes the death of the person assaulted. *S. v. Cephus,* 239 N.C. 521, 80 S.E. 2d 147; *S. v. Wingler,* 238 N.C. 485, 78 S.E. 2d 303; *S. v. Jones,* 188 N.C. 142, 124 S.E. 121. A specific intent *to kill,* while a necessary constitutent of the elements of premeditation and deliberation in first degree murder, is not an element of second degree murder or manslaughter. The intentional use of a deadly weapon as a weapon, when death proximately results from such use, gives rise to the presumptions. *S. v. Quick,* 150 N.C. 820, 64 S.E. 168. The presumptions do not arise if an instrument, which is *per se* or may be a deadly weapon, is not intentionally used as a weapon, *e.g.,* from an accidental discharge of a shotgun."

[6]   In instant case the trial judge in the challenged portion of the charge stated that "when it is admitted or proven that defendant *intentionally killed* the deceased with a deadly weapon . . . the law raises two presumptions . . . " In the same para-

graph the Judge charged correctly. The challenged definition does not conform to the one approved by this Court; however, the erroneous definition, standing alone, does not constitute prejudicial error since the definition complained of placed upon the State the added burden of proving a specific intent to kill. This is patently favorable to defendant, and defendant cannot ordinarily complain of instructions favorable to him. *State v. Price,* 271 N.C. 521, 157 S.E. 2d 127. The only possible vice in this instruction is that the giving of almost contemporaneous instructions—one correct and one incorrect—may have caused confusion in the minds of the jurors.

Defendant further contends that the effect of the above quoted portion of the charge is to require at least a finding of murder in the second degree, when it is proven that defendant with a deadly weapon intentionally inflicted the wound which proximately caused deceased's death.

It is true that when the presumptions of malice and an unlawful killing arise, nothing else appearing, defendant would be guilty of murder in the second degree. However, *it is* incumbent upon the trial judge to instruct the jury that the law casts upon the defendant the burden of showing to the satisfaction of the jury, not beyond a reasonable doubt, but simply to satisfy the jury as to legal provocation that would deprive the crime of malice and thus reduce it to manslaughter, or that will excuse it on some ground recognized in law as a complete defense. *State v. Mercer, supra; State v. Franklin,* 229 N.C. 336, 49 S.E. 2d 621.

[7] Here, the judicial stipulations and defendant's own testimony establish that defendant intentionally shot McCombs with a .25 caliber pistol, inflicting wounds which proximately caused his death. There was competent evidence showing legal provocation which could have satisfied the jury that defendant was only guilty of manslaughter. Likewise, there was competent evidence which might have satisfied the jury that defendant acted in self-defense so as to require a verdict of not guilty. This record contains adequate charges as to self-defense and as to the legal provocation which could reduce the verdict from second degree murder to manslaughter. Defendant, nevertheless, points to that portion of the charge which states

"Under ordinary circumstances the *law justifies or excuses the use of a deadly weapon to repel a simple assault.* This rule does not apply, however, where, from the testimony, a jury may find that the use of such weapon was justifiably, reasonably and necessarily used to save the person assaulted from great bodily harm or death, which person, having been in no fault himself, in bringing on the difficulty. The right of self-defense may, in exceptional cases, arise conditions of the assault, the position of the parties, and the size and strength of the parties as proven by the evidence, to satisfy the jury, that the danger of death or great bodily harm was eminent, where a defendant or an individual is without fault in bringing on the assault and a murderous or felonious assault is made upon him, that is, assault with intent to kill, is it—he is not required to retreat, but may stand his ground. . . . " (Emphasis added.)

Obviously, the first sentence above quoted is erroneous, but again appears to be non-prejudicial when considered out of context. However, some contradiction and confusion arises when the whole paragraph is contextually read.

[8] Defendant contends that the trial court erred in that it "failed to instruct on the principle of the restoration of the right to kill in self-defense which arises where there is evidence that a defendant at fault in bringing on a difficulty withdrew from the combat and so notified the deceased."

This assignment of error would have merit if the facts show that defendant withdrew from the conflict and so notified the deceased.

In the case of *State v. Kennedy,* 169 N.C. 326, 85 S.E. 42, the State's evidence tended to show that the defendant went into the deceased's store with pistol in hand, quarreled with decedent, and then shot and killed him. The defendant offered evidence tending to show that he was first assaulted by deceased and his brother, who beat him to his knees, and the defendant thereupon stated, "Boys, get off me," three or four times, then threatened to shoot, and when the assault continued, did shoot and kill the deceased. There, speaking to the question of withdrawal after provocation upon plea of self-defense, Justice Hoke stated:

"In *S. v. Brittain,* 89 N.C. 481, and in reference to defendant's first exception, this Court held: 'Where a prisoner makes an assault upon A. and is reassaulted so fiercely that the prisoner cannot retreat without danger of his life, and the prisoner kills A.: *Held,* that the killing cannot be justified upon the ground of self-defense. The first assailant does the first wrong and brings upon himself the necessity of slaying, and is therefore not entitled to a favorable interpretation of the law.' . . .

". . . .

"It may be well to note that the term 'quitting the combat,' within the meaning of these decisions, does not always and necessarily require that a defendant should physically withdraw therefrom. If the counter attack is of such a character that he cannot do this consistently with safety of life or limb, such a course is not required; but before the right of perfect self-defense can be restored to one who has wrongfully brought on a difficulty, and particularly where he has done so by committing a battery, he is required to abandon the combat in good faith and signify this in some way to his adversary. The principle here and the basic reason for it is very well stated in case of *Stoffer v. The State,* 15 Ohio St., 47: 'There is every reason for saying that the conduct of the accused relied upon to sustain such a defense must have been so marked in the matter of time, place, and circumstance as not only to clearly evince the withdrawal of the accused in good faith from the combat, but also as fairly to advise his adversary that his danger has passed and to make his conduct thereafter the pursuit of vengeance rather than measures taken to repel the original assault.' And when, as heretofore shown, the counter assault is so fierce that the original assailant cannot comply with this requirement, then, in the language of *Lord Hale,* 'He that first assaulted hath done the first wrong and brought upon himself this necessity, and shall not have the advantage of his own wrong to gain the favorable interpretation of the law, that that necessity which he brought on himself should, by way of interpretation, be accounted a flight to save himself from murder or manslaughter.'"

In 40 C.J.S., Homicide, Section 121, p. 995, we find the following:

" . . . In order that the right of self-defense may be restored to a person who has provoked or commenced a combat, he must attempt in good faith to withdraw from the combat. He must also in some manner make known his intention to his adversary; and if the circumstances are such that he cannot notify his adversary, as where the injuries inflicted by him are such as to deprive his adversary of his capacity to receive impressions concerning his assailant's design and endeavor to cease further combat, it is the assailant's fault and he must bear the consequences. As long as a person keeps his gun in his hand prepared to shoot, the person opposing him is not expected or required to accept any act or statement as indicative of an intent to discontinue the assault."

See also *State v. Correll,* 228 N.C. 28, 44 S.E. 2d 334; *State v. Robinson,* 213 N.C. 273, 195 S.E. 824; *State v. Tate,* 161 N.C. 280, 76 S.E. 713; *State v. Cox,* 153 N.C. 638, 69 S.E. 419; *State v. Gadwood,* 342 Mo. 466, 116 S.W. 2d 42.

[8] The facts presented by this record do not show that defendant attempted, in good faith, to withdraw from the affray, or that defendant clearly indicated to McCombs an intention so to withdraw. Thus, the trial judge was not required to instruct on this facet of the law of self-defense.

Defendant's 14th Assignment of Error is that the trial judge dwelt continually upon "the burden which defendant had to bear, thereby indicating that defendant had to prove his innocence and implanted in the minds of the jurors that the burden of proof lay upon defendant." This Assignment of Error presents one of defendant's more serious contentions.

We quote a portion of the charge pertinent to decision of this Assignment of Error:

"Now, upon the consideration of all the evidence, if you find that the defendant unlawfully and intentionally killed the deceased with a deadly weapon, *and if you find, so find beyond a reasonable doubt,* that the defendant has satisfied you, the *burden being on him to so satisfy you,* that the killing was done without malice, then it would be your duty to acquit the defendant on the charge of murder in the second degree, *and if he has so satisfied you* that the killing of the deceased was done without malice, then it

would be your duty to consider whether this defendant is guilty of manslaughter." (Emphasis added.)

In the case of *State v. Howell,* 239 N.C. 78, 79 S.E. 2d 235, the defendant assigned as error this portion of the trial judge's charge:

"I charge you, gentlemen, that if you find from the evidence or from the admissions of the defendant *beyond a reasonable doubt,* that the defendant, Harry Howell, killed the deceased, Larry Graham, that he killed him intentionally, that he killed him in the heat of passion by reason of anger suddenly aroused on account of the assault which deceased was making upon the defendant, Harry Howell, and before a sufficient time had elapsed for the passion to subside and reason to resume its habitual control, then the defendant would be guilty of manslaughter, and if you so find it would be your duty to render a verdict of guilty of manslaughter against the defendant unless the defendant has satisfied you that he killed the deceased, Larry Graham, in self-defense."

The Court, speaking through Parker, J. (later C. J.), held the charge to be prejudicial error, and stated:

" . . . [I]n applying the law to the facts the court charged the jury that the defendant *must show beyond a reasonable doubt* facts and circumstances sufficient to reduce the crime to manslaughter, and in so charging the court committed prejudicial error.

. . . .

"Even if the court before and after in its charge stated the general principle of law correctly that the defendant must show to the satisfaction of the jury facts and circumstances sufficient to reduce the crime to manslaughter, yet that did not cure the error in the vital part of its charge when it applied the law to the facts, by requiring the defendant to show those facts beyond a reasonable doubt. This Court has uniformly held that where the court charges correctly in one part of the charge, and incorrectly in another part, it will cause a new trial, since the jury may have acted upon the incorrect part of the charge. *S. v. Morgan,* 136 N.C. 628, 48 S.E. 670; *S. v. Isley,*

221 N.C. 213, 19 S.E. 2d 875; *S. v. Johnson,* 227 N.C. 587, 42 S.E. 2d 685; *S. v. McDay,* 232 N.C. 388, 61 S.E. 2d 86; *S. v. Stroupe,* 238 N.C. 34, 76 S.E. 2d 313."

See also: *Graham v. R. R.,* 240 N.C. 338, 82 S.E. 2d 346; *State v. Hardison,* 257 N.C. 661, 127 S.E. 2d 244.

[9] The charge here complained of clearly places the burden on defendant to show beyond a reasonable doubt facts which would reduce the charge from second degree murder to manslaughter. This is error and is not cured by the fact that the trial judge did thereafter correctly and fully charge as to the burden which defendant must assume in order to reduce the charge from second degree murder to manslaughter.

In giving the State's contentions, the trial judge stated:

"Now, in this case the State says and contends that you and each of you are to be satisfied from the evidence and beyond a reasonable doubt that the defendant is guilty of murder in the second degree, or at least is guilty of murder."

[10] Objections to a statement of contentions must be brought to the court's attention in apt time to allow correction. *State v. Butler,* 269 N.C. 733, 153 S.E. 2d 477. However, when the misstatement presents an erroneous view of the law or an incorrect application of it, counsel is not required to bring the inadvertence to the court's attention. *Baxley v. Cavenaugh,* 243 N.C. 677, 92 S.E. 2d 68; *State v. Gause,* 227 N.C. 26, 40 S.E. 2d 463; *State v. Grayson,* 239 N.C. 453, 80 S.E. 2d 387.

[11] Although the trial judge in other parts of the charge had clearly stated that the only verdicts to be considered by the jury were second degree murder, manslaughter, or not guilty, the misuse of "murder" in lieu of "manslaughter" might well have created some degree of confusion in the minds of the jurors.

[12] Defendant, relying on *State v. Ramey,* 273 N.C. 325, 160 S.E. 2d 56, contends that the trial judge erred by not specifically charging in his final mandate to the jury that if the State had failed to satisfy the jury beyond a reasonable doubt that deceased came to his death as the proximate result of the pistol wound inflicted by defendant, that they should return a verdict of not guilty.

Admittedly, it would have been the better practice to clearly charge in the final mandate as to all possible verdicts, however, it should be noted that instant case is distinguishable from *Ramey* in that in *Ramey* there was no judicial admission that the deceased's death was proximately caused by a bullet wound inflicted by the defendant. Here there was such admission.

Defendant further contends that the trial judge in his final mandate should have stated that if the State had failed to satisfy the jury beyond a reasonable doubt that defendant was either guilty of second degree murder or of manslaughter, that it should return a verdict of not guilty. In this case, when the trial judge correctly stated the law as to self-defense and instructed the jury that if they found to their satisfaction that defendant acted in self-defense they would return a verdict of not guilty, that he thereupon instructed as to the only defense or excuse presented by the facts of this case. We therefore conclude that neither of these contentions concerning the trial judge's final mandate to the jury would, standing alone, constitute prejudicial error.

It should be noted that the trial judge clearly charged as to the proper burden of proof required of the State, and that in other portions of the charge he correctly instructed as to the burden to be placed upon defendant to show self-defense or to show legal provocation which might have reduced the charge from murder in the second degree to manslaughter. The clear and correct statements of the applicable law in these portions of the charge compel the conclusion that errors of transcription created the erroneous and conflicting statements found in the record. In this connection it should be remembered that this Court and defendant's attorneys encountered tremendous difficulty in obtaining the transcript from the court reporter. Perhaps this difficulty in obtaining the transcript also deprived the Solicitor for the State of adequate opportunity to discover, before he agreed to the record and case on appeal, the erroneous additions and omissions which create an awkward and confusing charge.

This Court, however, is bound by the record as certified and judicially knows only that which appears of record. *Tomlins v. Cranford*, 227 N.C. 323, 42 S.E. 2d 100; *State v. Morgan*, 225 N.C. 549, 35 S.E. 2d 621.

This record convinces us that the total charge did not aid the jury in understanding the precise material issues necessary for determination of their verdict.

We have not discussed the remaining assignments of error since in all probability they will not occur upon a new trial.

For reasons stated, there must be a

New trial.