For the reasons stated above, the decision of the Court of Appeals is reversed.

Reversed.

STATE OF NORTH CAROLINA v. EDWARD COLLINS DAVIS

No. 8

(Filed 6 April 1976)

1. **Criminal Law § 77— introduction of in-custody statement — cross-examination as to subsequent self-serving statements**

Where the State introduced evidence of in-custody statements made by defendant on 6 October, but introduced no evidence of in-custody statements made by defendant on 7 October which constituted self-serving declarations, and defendant did not testify or offer evidence, the trial court properly refused to allow defense counsel to elicit the self-serving 7 October statements on cross-examination, the State not having opened the door by presenting testimony on *voir dire* concerning the 7 October statements and testimony before the jury concerning the 6 October statements.

2. **Criminal Law § 92— consolidation of charges for trial**

The trial judge may consolidate for trial two or more indictments in which defendant is charged with crimes of the same class and the crimes are so connected in time or place that evidence at the trial of one indictment will be competent at the trial of another.

State v. Davis

3. **Criminal Law § 92— consolidation of charges — fair trial**

In ruling upon a motion for consolidation of charges, the trial judge should consider whether the accused can fairly be tried upon more than one charge at the same trial, and if such consolidation hinders or deprives the accused of his ability to present his defense, the charges should not be consolidated.

4. **Criminal Law § 92— consolidation of murder charges**

The trial court did not err in consolidating two murder charges against defendant for trial where the crimes were continuing criminal acts which permit the admission in evidence of each in the trial of the other, and defendant's unsupported statement that he was prejudiced because he was denied the election of testifying in one case but not in the other was insufficient to show abuse of discretion by the trial judge in consolidating the charges.

5. **Homicide § 28— powder burns on hands — instruction on self-defense**

In a prosecution for the murder of two police officers, evidence of powder burns on defendant's hands was insufficient to require an instruction on self-defense since such evidence at most permits an inference that defendant was engaged in a struggle for possession of the death weapon when it was fired but fails to show that (1) defendant was free from fault in bringing on the difficulty and (2) it was actually or apparently necessary for defendant to kill or use the force used in order to save himself from death or great bodily harm.

6. **Homicide § 4— first degree murder defined**

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation.

7. **Homicide § 4— premeditation and deliberation**

Premeditation is thought beforehand for some length of time; deliberation means an intention to kill, executed by defendant in a cool state of blood, in furtherance of a fixed design or to accomplish some unlawful purpose.

8. **Homicide § 18— premeditation and deliberation — circumstances to consider**

Among the circumstances to be considered in determining whether a killing was done with premeditation and deliberation are: (1) want of provocation on the part of the deceased; (2) the conduct of defendant before and after the killing; (3) the dealing of lethal blows after deceased has been felled and rendered helpless; (4) the vicious and brutal manner of the killing; and (5) the number of shots fired.

9. **Homicide § 21— premeditation and deliberation — sufficiency of evidence**

The State's evidence was sufficient for the jury to find that defendant, after premeditation and deliberation, formed a fixed purpose to kill two police officers in a breathalyzer room and thereafter accomplished that purpose where the evidence was sufficient to support reasonable inferences that: (1) defendant was highly resentful and belligerent when he was taken into custody; (2) both

officers were at all times engaged in the execution of their sworn duty and did nothing to provoke an assault on them by defendant; (3) defendant forcefully obtained one officer's pistol and brutally shot him three times with at least one of the shots being fired after the officer had been felled and rendered helpless; (4) defendant shot the second officer who was sitting at his desk with his pistol holstered; and (5) without offering any aid to the victims or notifying anyone of their plight, defendant took the first officer's pistol and watch and documents which identified defendant as being in the breathalyzer room and fled.

**10. Constitutional Law § 36— death penalty — constitutionality**

Imposition of the death penalty for first degree murder does not constitute cruel and unusual punishment.

APPEAL by defendant from *Snepp, J.,* 3 March 1975 Session of BUNCOMBE Superior Court.

Defendant was charged in separate indictments with the first-degree murder of Lawrence Canipe, Jr., and William Dean Arledge. The charges were consolidated for trial over defendant's objection and defendant entered a plea of not guilty to each charge.

The State offered evidence which tended to show the following:

On 5 October 1974, Lt. Tom Alexander, an employee of the Haywood County Sheriff's Department, was driving from Hendersonville to Waynesville when he observed defendant driving a black Buick automobile at an extremely high rate of speed. Patrolman Lawrence Canipe responded to Lt. Alexander's radio request for assistance and stopped defendant after a pursuit which covered approximately one mile. After the patrolman had obtained defendant's driver's license, he requested that defendant get out of his automobile and at that time the officer saw several weapons in defendant's car. Lt. Alexander stated that defendant was very talkative but that he was coherent. Defendant wanted to know why he was being handcuffed and, among other things, stated that he had a son who was a policeman but that he was not an S.O.B. like Lt. Alexander. The weapons were removed from the automobile and defendant was taken by Trooper Canipe to a room in the Buncombe County Courthouse where breathalyzer tests were usually administered.

Gary Moffitt, who worked in the basement of the courthouse, testified that at about 8:00 p.m. he heard three to five

noises which sounded like a door slamming in the vicinity of the breathalyzer room.

Trooper Thad May came to the breathalyzer room at about 8:23 p.m. on 5 October and found the door locked. He obtained a key and upon entering the room, he found the bodies of Sgt. Arledge and Trooper Canipe. Trooper Canipe's body was on the floor near the door and Trooper May observed that his pistol holster was empty and that there was a hole on the left side of Canipe's shirt. The fallen patrolman's shirt, trousers and shoes were bloody. Sgt. Arledge's body was in a kneeling position near a chair and Trooper May observed blood around a hole in the left side of his back below his shoulder and on his right arm and hand. Sgt. Arledge's fully loaded pistol was found in his holster. Trooper May also found a partially completed form used by the State Patrol in cases involving driving an automobile under the influence of intoxicants. Defendant's name had been entered on this form along with the notation "test refused." The form listed L. C. Canipe as arresting officer and Sgt. Arledge as breathalyzer officer.

Dr. John McLeod, a pathologist, testified that he performed autopsies on the bodies of both Canipe and Arledge and that in his opinion they both died as a result of gunshot wounds. According to his testimony Trooper Canipe had been shot three times and two of the bullets caused "through and through wounds" and one bullet lodged just beneath Trooper Canipe's skin. It was Dr. McLeod's opinion that this bullet did not completely exit because the trooper's back was pressed against some firm object when the bullet struck.

Arledge had sustained a gunshot wound to his chest and right arm. The bullet entered his left shoulder, penetrated his chest, exited through the anterior portion of the right shoulder, and then through the medial portion of his right arm.

SBI Agent Michael Lewis who investigated the shooting found a bullet and a copper casing beneath Canipe's body and a part of a Speidel watchband under his chest. A bullet was found in the door about seven inches from the floor and another bullet was found in the window sill.

Defendant was arrested on a charge of public drunkenness on the following morning and at that time a watch, later identified as the property of Trooper Canipe, was found in his possession. The State also offered evidence tending to show

that Trooper Canipe's pistol was found in an area near the courthouse along with several official forms bearing the names of the deceased officers and the name of defendant. It was established that soil found on defendant's clothes was similar to that found in this area.

SBI Agent James Maxey testified that in his opinion there were flame burns on the back of defendant's left hand and burned powder deposits on both of defendant's hands. SBI Agent Maxey also testified concerning a statement made to him by defendant on 6 October 1974. We will more fully consider this statement in the opinion.

Defendant offered no evidence.

The jury returned a verdict of guilty of first-degree murder on each charge and defendant appealed from judgments imposing mandatory death sentences.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Lester V. Chalmers, Jr., for the State.*

*Robert L. Harrell, Assistant Public Defender, for defendant appellant.*

BRANCH, Justice.

[1] Defendant contends that the trial judge committed prejudicial error by refusing to permit the State's witness, Sgt. Cook, to testify concerning a statement made by defendant.

By agreement of the parties, the court conducted a *voir dire* hearing concerning two statements made by defendant. One statement was made on 6 October 1974 and the other on 7 October 1974. The only witness offered on *voir dire* was Sgt. Cook.

Defendant does not challenge the *admissibility* of either of the confessions and properly so since there was ample evidence offered on the *voir dire* hearing to support Judge Snepp's finding "that the statements were made freely, intelligently, and voluntarily after the defendant had been fully advised of his rights under the law and had knowingly and intelligently waived those rights." The trial judge's findings and conclusions of law in turn supported his ruling that both confessions were admissible into evidence. *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581 *cert. denied,* 396 U.S. 934; *State v. Barber,* 278 N.C. 268, 179 S.E. 2d 404.

State v. Davis

After the trial court's ruling the jury returned to the courtroom and the district attorney did not examine Sgt. Cook before the jury but tendered the witness for cross-examination. Thereupon, defendant's counsel sought to elicit from the witness Cook the context of the confession allegedly made by defendant on 7 October 1974. The trial judge sustained the State's objection.

In order to keep our consideration of this assignment of error in proper perspective, we here note that the State subsequently offered the testimony of SBI Agent Maxey who related the statements made by defendant to Sgt. Rhew and the witness on *6 October 1974.* The statement as related by the witness Maxey was to the effect that defendant told the officers that he was in the breathalyzer room with two highway patrolmen when the door opened and an older man stepped inside the room and shot Trooper Canipe and then shot the second patrolman. Thereafter defendant grabbed his property and the pistol belonging to Trooper Canipe and fled. On cross-examination the witness stated: "I was not present when Mr. Davis made a statement the next day . . . I don't know whether there was a second interview or not."

The statement allegedly made by defendant on 7 October in substance was that after he was brought into the breathalyzer room the arresting officer filled out a form and told him to sign it and he told the officer to sign it himself. Thereupon the arresting officer pulled his gun and told defendant to sign or he would blow his heart out. A struggle ensued between the defendant and the officer during which the gun fired twice hitting the arresting officer. Defendant stated that he did not know how the other officer was hit. He thereafter took his belongings and the officer's gun and fled.

It is well settled that if the State offers a part of a confession, the accused may require the whole confession to be admitted into evidence. *State v. Marsh,* 234 N.C. 101, 66 S.E. 2d 684; *State v. Edwards,* 211 N.C. 555, 191 S.E. 1; 2 Stansbury's N. C. Evidence § 187 (Brandis Rev. 1973). However, we are here faced with two separate conflicting statements made on different occasions.

In the case of *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677, this Court considered a question similar to the one here

under consideration. There, the Court, speaking through Justice Huskins, stated:

> Defendant's counsel proposed to ask a State's witness on cross-examination if defendant, when told by the witness that he was under arrest for rape, did not immediately deny his guilt. In the absence of the jury the witness stated that the defendant did deny it. The court sustained objection to the question and excluded the answer. This is the basis for defendant's sixth assignment of error.

> Defendant did not take the witness stand and offered no evidence whatever. The proposed cross-examination was therefore not competent to corroborate the defendant or, for that matter, any other witness. It was properly excluded as a self-serving declaration. . . .

Headnote No. 1 in the case of *State v. Davis*, 246 N.C. 73, 97 S.E. 2d 444, correctly and concisely states the pertinent holding of that case. We quote:

> Where the State introduces testimony of statements made by defendant on a particular date, but introduces no evidence in regard to statements made by him on a subsequent date, defendant is not entitled to elicit from the State's witness testimony as to self-serving declarations made by defendant on the latter date, the State not having "opened the door" to such testimony.

Defendant argues that the State "opened the door" when Sgt. Cook testified on *voir dire* and when SBI Agent Maxey testified concerning the 6 October 1974 statement. We do not agree. Defense counsel had full opportunity to examine SBI Agent Maxey concerning the 6 October statement. It is noted, however, that this witness testified that he knew nothing about the 7 October statement. The State elected not to examine Sgt. Cook before the jury and the trial judge correctly refused to allow defense counsel to elicit this self-serving evidence on cross-examination at a time when the State had offered no evidence relating to it and defendant had not testified or offered evidence. This assignment of error is overruled.

Defendant assigns as error the ruling of the trial judge granting the State's motion to consolidate the two charges for trial.

State v. Davis

**[2]** The general rule in this jurisdiction is that the trial judge may consolidate for trial two or more indictments in which the defendant is charged with crimes of the same class and the crimes are so connected in time or place that evidence at the trial of one indictment will be competent at the trial of the other. *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721; *State v. Anderson,* 281 N.C. 261, 188 S.E. 2d 336; *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652.

The usual objection to consolidation grows out of circumstances where one or more of several defendants takes the position that he or they will be prejudiced if forced to trial with the other defendants; however, we have also considered circumstances in which a single defendant objected to being tried upon several charges at the same time. We rejected such a contention in *State v. Jarrette, supra,* and in so ruling the Court, speaking through Justice Lake, stated:

> Over the objection of the defendant, the State's motion to consolidate for trial the four charges (murder, rape, kidnapping and armed robbery) was granted and the defendant's motion for severance was denied. In these rulings there was no error.

G.S. 15-152 provides:

> "When there are several charges against any person for the same act or transaction or for two or more acts or transactions connected together, or for two or more transactions of the same class of crimes or offenses, which may be properly joined, instead of several indictments, the whole may be joined in one indictment in separate counts; and if two or more indictments are found in such cases, the court will order them to be consolidated * * * . "

> The uncontradicted evidence is that the entire series of events comprising the four crimes with which the defendant is charged began at about 3:30 p.m., Eastern Standard Time, on 11 February 1973 and was concluded when it was just dark enough to require lights on automobiles. On that date, this would be approximately two and one-half hours. Obviously, the four offenses constituted a continuing criminal episode. See: *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652; *State v. Turner,* 268 N.C. 225, 150 S.E. 2d 406; *State v. White,* 256 N.C. 244, 123 S.E. 2d

483; *State v. Chapman,* 221 N.C. 157, 19 S.E. 2d 250. They were so related in time and circumstance as to permit the admission in evidence of each in the trial of the others. *State v. Morrow,* 262 N.C. 592, 138 S.E. 2d 245; *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364; *State v. Harris,* 223 N.C. 697, 28 S.E. 2d 232; Stansbury, North Carolina Evidence (Brandis Revision), § 91. Under these circumstances, the consolidation of the cases for trial was within the sound discretion of the trial judge. *State v. Yoes* and *State v. Hale,* 271 N.C. 616, 157 S.E. 2d 386.

We note parenthetically that G.S. 15-152 was repealed by Session Laws 1973, c. 1268, s. 26, however, this legislative change became effective July 1, 1975, subsequent to the trial of this case.

[3] It is true that in ruling upon a motion for consolidation of charges, the trial judge should consider whether the accused can fairly be tried upon more than one charge at the same trial. If such consolidation hinders or deprives the accused of his ability to present his defense, the cases should not be consolidated. *Pointer v. United States,* 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208; *Dunaway v. United States,* 205 F. 2d 23. Nevertheless it is well established that the motion to consolidate is addressed to the sound discretion of the trial judge and his ruling will not be disturbed absent a showing of abuse of discretion. *State v. Jarrette, supra; State v. Yoes* and *Hale v. State,* 271 N.C. 616, 157 S.E. 2d 386; *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44; *Dunaway v. United States, supra.*

[4] Defendant argues that he was prejudiced by the consolidation because without the consolidation of charges he would have had the election of testifying in one case without being forced to testify in the other.

In instant case, the charged crimes were obviously continuing criminal acts which permit the admission in evidence of each in the trial of the other. We are unable to discern any material reason why it would be to defendant's advantage to testify in one case and not the other. Certainly his unsupported statement of possible prejudice is not sufficient to show abuse of discretion on the part of the trial judge in allowing the motion to consolidate the charges for trial.

[5] Defendant next assigns as error the denial of his request for special instructions on self-defense. He contends that the

State's evidence of powder burns on his hands was sufficient to show that defendant was engaged in a struggle for possession of the weapon when it was fired thereby requiring instruction on self-defense.

The general rule is that when the State or defendant produces evidence that defendant acted in self-defense, the question of self-defense becomes a substantial feature of the case requiring the trial judge to state and apply the law of self-defense to the facts of the case. *State v. Deck,* 285 N.C. 209, 203 S.E. 2d 830; *State v. Watkins,* 283 N.C. 504, 196 S.E. 2d 750. Conversely, if the evidence is insufficient to evoke the doctrine of self-defense, the trial judge is not required to give instructions on that defense even when specifically requested. *State v. Freeman,* 275 N.C. 662, 170 S.E. 2d 461; *State v. McLawhorn,* 270 N.C. 622, 155 S.E. 2d 198.

A person may kill in self-defense if he be free from fault in bringing on the difficulty and if it is necessary, or appears to him to be necessary to kill so as to save himself from death or great bodily harm. The reasonableness of his belief and the amount of force required, must be judged by the jury upon the facts and circumstances as they appeared to the defendant at the time of the killing. *State v. Deck, supra; State v. Kirby,* 273 N.C. 306, 160 S.E. 2d 24 *cert. denied,* 386 U.S. 1032; *State v. Smith,* 268 N.C. 659, 151 S.E. 2d 596; *State v. Fowler,* 250 N.C. 595, 108 S.E. 2d 892.

The facts of this case when taken in the light most favorable to defendant, as we are required to do, are insufficient to raise the issue of self-defense. *State v. Watkins, supra; State v. Finch,* 177 N.C. 599, 99 S.E. 409. At most the evidence permits an inference that defendant struggled for possession of the weapon before the fatal shots were fired. The record is void of evidence tending to show that: (1) Defendant was free from fault in bringing on the difficulty, (2) it was necessary or appeared to defendant to be necessary for him to kill or use the force used in order to save himself from death or great bodily harm.

We hold that under this evidence, the trial judge properly refused to instruct the jury on self-defense.

This record does not disclose that defendant's counsel moved for judgment as of nonsuit at the appropriate time or by his brief questioned the sufficiency of the evidence to show pre-

meditation or deliberation so as to sustain the verdicts of murder in the first degree. Nevertheless since these cases involve the imposition of the death penalty we, *ex mero motu,* elect to consider this question.

**[6, 7]** Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. DuBoise,* 279 N.C. 73, 181 S.E. 2d 393; *State v. Reams,* 277 N.C. 391, 178 S.E. 2d 65 *cert. denied,* 404 U.S. 840. Premeditation may be defined as thought beforehand for some length of time. "Deliberation means . . . an intention to kill, executed by defendant in a cool state of blood, in furtherance of a fixed design . . . or to accomplish some unlawful purpose . . . . " *State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541.

Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. *State v. DuBoise, supra; State v. Winford,* 279 N.C. 58, 181 S.E. 2d 423.

**[8]** In our opinion, there is ample evidence in the case *sub judice* to permit the jury to find that defendant unlawfully killed Sgt. William Dean Arledge and Trooper Lawrence Canipe with malice. Thus, the only remaining question is whether the evidence taken in the light most favorable to the State is sufficient to support legitimate inferences and findings by the jury that defendant, after premeditation and deliberation, formed a fixed purpose to kill Trooper Canipe and Sgt. Arledge and thereafter accomplished this purpose. *State v. Perry, supra; State v. Walters,* 275 N.C. 615, 170 S.E. 2d 484. Obviously premeditation and deliberation are not ordinarily susceptible of proof by direct evidence and therefore must usually be proved by circumstantial evidence. *State v. Walters, supra.* Among the circumstances to be considered in determining whether a killing is done with premeditation and deliberation are: (1) Want of provocation on the part of the deceased, *State v. Hamby* and *State v. Chandler,* 276 N.C. 674, 174 S.E. 2d 385 *modified on other grounds,* 408 U.S. 937, 33 L.Ed. 2d 754, 92 S.Ct. 2862; (2) the conduct of defendant before and after the killing, *State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817; (3) the dealing of lethal blows after deceased has been felled and rendered helpless, *State v. DuBoise, supra;* (4) the vicious and brutal manner of the killing, *State v. Fountain,* 282 N.C. 58, 191 S.E. 2d 674; (5) the number of shots fired, *State v. Sparks,*

285 N.C. 631, 207 S.E. 2d 712 *pet. for cert. filed,* 43 U.S.L.W. 3392 (U.S. Nov. 29, 1974) (No. 669).

**[9]**   The evidence in instant cases is sufficient to support reasonable inferences that: (1) When defendant was taken into custody, he was highly resentful and belligerent, (2) both Trooper Canipe and Sgt. Arledge were at all times engaged in the execution of their sworn duty and did nothing to provoke an assault upon them by defendant, (3) after forcefully obtaining Trooper Canipe's pistol, defendant brutally shot him three times and at least one of the shots was fired after the Trooper had been felled and rendered helpless, (4) defendant while engaged in one continuing criminal act shot Sgt. Arledge who was apparently sitting at his desk with his glasses on top of his head and with his pistol holstered, and (5) defendant without offering any aid to the fatally wounded men or even anonymously notifying anyone of their plight took Trooper Canipe's pistol, documents which identified defendant as being in the room where the killings occurred, a watch belonging to Trooper Canipe and fled.

In our opinion, when taken in the light most favorable to the State, the evidence was sufficient to permit, but not require, the jury to reasonably infer that defendant after premeditation and deliberation formed a fixed purpose to kill Trooper Lawrence Canipe and Sgt. William Arledge and thereafter accomplished that purpose.

**[10]**   Finally defendant contends that the death penalty is cruel and unusual punishment and therefore its imposition is constitutionally impermissible. These contentions have been considered and rejected by this Court in a host of recent decisions. We adhere to the holdings in those cases. *State v. Alford,* 289 N.C. 372, 222 S.E. 2d 222 (1976); *State v. Armstrong,* 287 N.C. 60, 212 S.E. 2d 894 (1975); *State v. Vick,* 287 N.C. 37, 213 S.E. 2d 335 (1975); *State v. Lowery,* 286 N.C. 698, 213 S.E. 2d 255 (1975); *State v. Simmons,* 286 N.C. 681, 213 S.E. 2d 280 (1975); *State v. Stegmann,* 286 N.C. 638, 213 S.E. 2d 262 (1975); *State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214 (1975); *State v. McLaughlin,* 286 N.C. 597, 213 S.E. 2d 238 (1975); *State v. Lampkins,* 286 N.C. 497, 212 S.E. 2d 106 (1975); *State v. Avery,* 286 N.C. 459, 212 S.E. 2d 142 (1975); *State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113 (1975); *State v. Sparks, supra; State v. Honeycutt,* 285 N.C. 174, 203 S.E. 2d 844 (1974); *State v. Dillard,* 285 N.C. 72, 203 S.E. 2d 6 (1974); *State v.*

*Noell*, 284 N.C. 670, 202 S.E. 2d 750 (1974) ; *State v. Jarrette, supra.*

Our careful examination of this entire record discloses that defendant has had a fair trial free from prejudicial error.

No error.