The plaintiff, a traveling salesman, on 23 December, 1897, hired a team — a buggy and two horses, with a driver — furnished from a liveryman in Reidsville, to take him from Reidsville to Spray and return. On the way back from Spray to Reidsville, about 8 o'clock p. m., the plaintiff's team met in the road, in the darkness, a team of the defendants — a surry and two horses — driven by the driver of the defendants. The place where the teams met was a level surface, about 50 yards long and 12 or 13 feet wide in the clear. The evidence of the plaintiff tended to prove that the two teams met just as the one of the (594) plaintiff had ascended a steep hill and reached the level road at the top, the defendants' team traveling at the rate of 8 or 10 miles an hour; that it was so dark, and there being also a bend in the road, they could not see the defendants' team until within 20 yards; that upon seeing the defendants' team, they began to shout to the driver to stop, and that no attention was paid to the cries; that the plaintiff's driver, to prevent a collision and injury, turned suddenly out of the road and upon a bank, and in doing so upset the buggy, by which the plaintiff was thrown out and injured.
The defendants' evidence tended to show that their team was going at a slow rate of speed, about 3 miles an hour; that there was plenty of room for both teams to pass without collision or injury to either, and that, at the time of meeting, the defendants' driver pulled his team as far out of the road as it was possible to do.
The plaintiff made three special prayers for instruction, in substance as follows: First, that from the undisputed evidence the driver of defendants' team, at the time of the alleged injury of the plaintiff, was the servant of the defendants and in the regular course of his employment, and if the driver was guilty of negligence on that occasion, then the defendants were as much responsible for that negligence as if the defendants themselves had been driving the team. Second, that a recovery by the plaintiff would not be dependent upon an actual collision of the teams if by the negligence of the defendants' driver the plaintiff was suddenly put in danger, and the driver of the plaintiff, in order to extricate himself and the plaintiff from peril, suddenly pulled the team upon a bank at the side of the road, and that was done under a reasonable apprehension that it was necessary for their safety, (595) and the plaintiff thereby was thrown from the buggy and injured. Third, that notwithstanding the plaintiff might not have been injured if the buggy had not been driven out of the road and upon the bank, yet if the plaintiff was put in sudden peril by the negligence of the *Page 382 
defendants' driver, and the buggy was driven on the bank under a reasonable apprehension that a collision would have occurred if it had remained in the road, and the plaintiff's driver acted as a reasonably prudent man would have acted under the circumstances, in the effort to extricate himself from sudden peril, and the plaintiffs' was thereby thrown from the buggy and injured, then the plaintiff's injury would be the direct consequence of the defendants' negligence. Fourth, that it was the duty of the defendants' driver to drive his team in such a manner that he would not unnecessarily imperil the rights of persons on the road, and that if it was dark and travelers from an opposite direction might not be seen or heard, it was all the more necessary that he should drive carefully to prevent sudden peril, accidents and injury to those he might meet, and that even if the road was wide enough for the teams to have passed in safety, yet if the defendants' driver negligently delayed to turn out of the road until his horses' heads got nearly to the heads of the plaintiff's horses, and the plaintiff and his driver were thereby put in reasonable apprehension that there was about to be a collision, and, to avoid the impending danger, the buggy of the plaintiff was pulled upon the bank and the plaintiff thereby thrown from his buggy and injured, the injury was the result of the defendants' negligence. The instructions were given, and the defendants excepted.
The error complained of, as to the refusal to give the first prayer, was that the court assumed that the person who was driving the defendants' team was the servant of the defendants and acting in the usual (596) course of his employment. The exception was without merit. It was admitted in the answer that the team and driver were the team and driver of the defendants. Evidence to that effect on both sides was introduced, and special instructions were requested by the defendants, based on that assumption.
Exception to the second prayer for instructions was that his Honor left out any instruction concerning the conduct of the plaintiff in jumping from the buggy, and applying the rule of the prudent man to then facts. Without passing, just now, upon whether or not the defendants were entitled to any instruction as to whether the plaintiff jumped from the buggy, it appears that an instruction — all the defendants were entitled to — was given, in the following words: "Even if the plaintiff, Crampton, was placed in a position of danger or peril, the law requires that he should exercise ordinary firmness in avoiding the peril of his position, and if he became frightened and jumped from the buggy when a man of ordinary firmness would not have jumped, under the same circumstances, any injury received by him in consequence of, or as the result of, this act, cannot be imputed to the negligence of the defendants, but would be considered as the result of his own negligence." *Page 383 
As to the rule of the prudent man, his Honor told the jury that the apprehension for their safety by the driver must have been reasonable; and, to further illustrate that doctrine, he said, in his charge in chief: "To answer the first issue `Yes,' you must find by a preponderance of the evidence, in the first place, that defendants' driver was driving in such a negligent manner as to cause the driver, Hunt (plaintiff's driver) to believe his buggy would be struck if he remained in the road, and that to avoid a collision Hunt drove upon the bank, and the plaintiff was thereby thrown out and injured. In the next place, you (597) must find by a preponderance of the evidence that a driver of ordinary prudence, under the circumstances, and when Hunt drove on the bank, would have had reason to believe that there was danger of a collision, and would probably have driven upon the bank to avoid the danger."
The third instruction was correct in every particular. Vallo v. ExpressCo., 14 L.R.A., 745; Lincoln v. Nichols, 20 L.R.A., 855.
The ground of exception to the fourth instruction was the same as that made to the second, and we have disposed of that.
The defendants submitted the following prayers for instruction:
1. It was not negligence in the defendants' servant in charge of his team to drive rapidly on an open country highway if the danger of collision was slight, and even if the jury find that he was driving rapidly at the time he first saw, or could by reasonable care have seen, the team of Crafton Ogburn, in which the plaintiff was riding, and the defendants' servant, as soon as he saw the team, did what he could, under the circumstances, to avoid any collision with the team of said Crafton 
Ogburn, there was no negligence on the part of the defendants' servant, and the jury will answer the first issue "No."
The court declined to give the instruction, and the defendants duly excepted.
2. That the servant of defendants, who was driving their team, was required to exercise only that degree of care or prudence in driving over the public highway which careful drivers are accustomed to use, or that degree of care usual with careful drivers under the same circumstances, and if the jury find in this case that the defendants' driver used that degree of care in order to avoid a collision with the other team, they will answer the first issue "No," and the defendants' servant in such case was not guilty of negligence. (598)
This instruction was given by the court.
3. That if the defendants' driver, as soon as he discovered the other team, either standing still or approaching him in the road, drove his team out of the way, as well as he could under the circumstances, in *Page 384 
order to give the other team sufficient space in the road to pass, and he thought at the time that the driver of Crafton Ogburn had sufficient space to pass his team in safety, and the driver of the defendants could not give more space than he did, by reason of the fact that there were obstructions on his side of the road which prevented the driving of his team further away from the other team, the jury will find that there was no negligence on the part of the defendants.
This instruction was refused as asked for, but the court gave the same, with this addition at the end thereof, to wit, "after discovering the other team."
To the refusal to give the instruction, and to the modification thereof, defendants duly excepted.
4. If the driver of the team of Crafton Ogburn had sufficient space in the roadway, or traveled part of the road, to pass the team of the defendants in safety, and the driver of Crafton Ogburn's team drove said team farther to the right than he was required to do under the circumstances in order to pass, and by reason thereof the plaintiff was thrown from buggy or vehicle in which he was riding, the jury will answer the first issue "No," as the injury in such case was not caused by the negligence of the defendants' servant, but by that of the driver of the team of Crafton Ogburn.
The court refused this instruction, and defendants excepted.
(599) The court gave it in a modified form, as follows:
"If it was a fact, and would have so appeared to a man of ordinary prudence and firmness under the circumstances, that the driver of the team of Crafton Ogburn had sufficient space in the roadway, or traveled part of the road to pass the team of the defendants in safety, then, inasmuch as the evidence shows that the driver of Crafton Ogburn's team drove said team so as to throw the wheels on the embankment, the jury will answer the first issue "No," as the injury in such case was not caused by the negligence of the defendants' servant as the proximate cause, but by that of the driver of Crafton Ogburn."
The defendants excepted to the modification of the court.
5. That all that was required of the servant of the defendants, IvieBros., under the circumstances, was to use such a degree of care as was proportioned to the danger of the situation and surroundings, and to do what a reasonable and prudent man would have done under the circumstances, and if he exercised that degree of care the jury will answer the first issue "No."
This instruction was given by the court.
6. That if the accident to the plaintiff occurred by reason of the fact that his legs were so wrapped in the lap robe which he was using that *Page 385 
he could not prevent his fall from the buggy, and if the jury find that his fall from the buggy was caused by the manner in which his legs were wrapped in the lap robe, they will answer the first issue "No."
The court declined to give the instructions, and the defendants duly excepted.
7. If the jury find that the plaintiff either fell or was thrown from the buggy by reason of the fact that the bit in the mouth of one of the horses drawing the buggy broke and the horse became unmanageable, the jury will answer the first issue "No."
This instruction was given by the Court. (600)
8. If the jury find the facts to be as set out in either of the prayers for instructions, Nos. 4, 6, and 7, they will answer the second issue "Yes."
The court declined to give this instruction, and the defendants duly excepted.
9. If the jury believe from the evidence that, when the conveyances passed each other in the road, the plaintiff's buggy was on an incline of only 12 or 18 inches, and that this was insufficient to capsize the buggy or throw plaintiff out, so that there was no reasonable ground for apprehension on his part that he would be thrown out, and under these circumstances he jumped out, the result of his fall cannot be charged against the defendants.
This instruction was given by the court.
10. If the jury believed from the evidence that the incline or tilt of the plaintiff's buggy was not great enough to throw from it a man in the exercise of ordinary care, under the circumstances when the plaintiff was thrown from the buggy, the fact is to be attributed to want of care on his part, and the defendants cannot be held responsible for the effects of his fall.
This instruction was given by the court.
11. If the jury believe from the evidence that the driver of Ivie Bros., the defendants, as soon as he knew there was a conveyance meeting him in the road, turned his team to the right and moved to the right as far as he could with safety to himself and team, and that between his conveyance and the opposite side of the road there remained sufficient space for the plaintiff's conveyance either to pass safely or to stand safely till he passed with his conveyance, then the defendants' driver exercised all the care which the law required of him, and the defendants cannot be held to account for the injury complained of by plaintiff, and this would be so, even though defendants' driver had been (601) driving at a rapid gait just before that time.
The court refused to give this instruction, and defendants excepted.
The court gave the instruction, with an addition thereto, as follows: *Page 386 
"Provided the driver of defendants, before he knew he was meeting a conveyance, was not driving so recklessly and carelessly as to reasonably cause plaintiff's driver to believe at the time he turned out of the road that his buggy would be struck if he remained in it."
The defendants excepted to the modification of this instruction.
12. If the jury believe from the evidence that the plaintiff had passed over the road often and was familiar with its condition and thought it was too narrow for two conveyances to pass safely, and if he apprehended, when he saw the defendants' conveyance approaching, that danger was imminent, and had time and opportunity to do so, it was his duty to get out of his conveyance until they did pass, and, failing to do so, he is guilty of contributory negligence and cannot recover.
This instruction was given by the court.
13. If the jury believe from the evidence that the plaintiff's conveyance was passed safely by the defendants' conveyance and it was not necessary for the plaintiff's conveyance to have moved any farther with its outside wheels elevated on the embankment, and if because of the bridle bit of one of his horses breaking, or for any other reason, the plaintiff's buggy did move farther on the incline before coming back into the road, and thereby the plaintiff was thrown from his buggy, this was no fault of the defendants' driver, and the defendants cannot (602) be held responsible for the plaintiff's injury.
The court declined to give this instruction, and defendants excepted.
The court modified the instruction, as follows:
"If the jury believe from the evidence that the plaintiff's conveyance was passed safely by the defendants' conveyance, and it was not necessary for the plaintiff's conveyance to have moved any farther, with its outside wheels elevated on the embankment, and it would have so appeared to a man of ordinary prudence under the circumstances, and if, because of the bridle bit of one of the horses breaking or for any other reason, the plaintiff's buggy did move farther on the incline before coming back into the road, and thereby the plaintiff was thrown from his buggy, this was no fault of the defendants' driver, and the defendants cannot be held responsible for the plaintiff's injury."
To the modified instruction the defendants excepted.
14. If the plaintiff's buggy was driven farther to the right and up the embankment on that side than was necessary under the circumstances for the safe passage of the buggy by the team of defendants, and the injury to the plaintiff was caused thereby, the jury cannot impute negligence to the defendants as the cause of the injury to the plaintiff, and the first issue should be answered "No."
The court declined to give the instruction, and the defendants duly excepted. *Page 387 
15. If the plaintiff hired the team of Crafton Ogburn for the purpose of being carried from Reidsville to Leaksville and Spray, and back to Reidsville, and any negligence of his driver, Whit Hunt, which may have caused or contributed to plaintiff's injury, is by law imputed to, and to be taken and considered by the jury as, the negligence of the plaintiff himself.
The court declined to give the instruction, and the defendants duly excepted. (603)
16. If the negligence of the driver, Whit Hunt, proximately caused the plaintiff's injury, the jury will answer the first issue "No"; and if there was any negligence of the defendants in causing the injury, and the negligence of Whit Hunt contributed thereto, the jury will answer the second issue "Yes."
The court declined to give instruction, and the defendants duly excepted.
17. Even if the plaintiff, Crampton, was placed in a position of danger or peril, the law requires that he should exercise ordinary firmness in avoiding the peril of his position, and if he became frightened and jumped from the buggy, when a man of ordinary firmness would not have jumped, under the same circumstances, any injury received by him in consequence of, or as the result of, his act, cannot be imputed to the negligence of the defendants, but would be considered as the result of his own negligence.
This instruction was given by the court.
The first sentence of the first prayer could not have been given. It did not fit the facts in the case. The remaining portion of that prayer was properly refused, as were the third and eleventh prayers, for they left out of consideration entirely the view of the alleged negligence of the defendants' driver prior to the meeting of the teams. His Honor's addition to the third prayer was proper. The fourth prayer left out of consideration the idea of reasonable apprehension of danger on the part of the plaintiff's driver, and was properly refused. Its modification by his Honor was correct. There was no error in the refusal to give the sixth instruction, for there was no testimony upon which it could be based. Hunt, the plaintiff's driver, was asked, on his cross-examination, if he did not tell Hampton that the plaintiff had (604) told him that if he had not gotten his feet tangled up in the lap robe he would not have fallen out of the buggy. To which the witness said he had made no such statement to Hampton. To affect Hunt's credibility, the defendants introduced Hampton as a witness, who said that Hunt told him that Crampton, in jumping out, had hung his feet in the lap robe and that caused him to fall. That evidence was not sufficient to justify the giving of the sixth instruction. The eighth prayer *Page 388 
was properly refused. There was no error in his Honor's refusal to give, without qualification, the thirteenth prayer, but, with the modification added by his Honor, it became a proper instruction.
The fourteenth, fifteenth, and sixteenth prayers were founded on the defendants' views of the law, that if the plaintiff's driver contributed to the injury of the plaintiff, the law would impute that negligence to the plaintiff himself, and that if the negligence of the plaintiff's driver was the proximate cause of the injury, the defendants would not be liable, even if their driver had been negligent. The sixteenth prayer contained both propositions of law, and the view of the court was that one was a correct proposition and the other was not, and his Honor declined to give it as it was framed. But he did give the first section of the sixteenth prayer, substantially, in the following words: "Even if Smallwood (defendants' driver) was driving negligently, and Hunt thought it necessary to drive upon the bank to avoid a collision, yet if an ordinarily prudent driver, under the circumstances, would not have had reason to believe there was danger of collision, or probably would not have driven on the bank, you will answer the first issue `No,' for in such case the defendants' negligence was not the natural cause of Hunt's driving on the bank. Hunt's negligence did not contribute with, and, together with (605) defendant's negligence, constitute the proximate cause. It was of itself the direct, the proximate, cause of the injury." The other sections of the sixteenth prayer his Honor refused to give. On the contrary, he instructed the jury: "Now, even if Hunt was negligent in the manner of his driving while passing defendants' conveyance, as, for example, by turning out more suddenly or higher up on the bank than an ordinarily prudent man would have done, his negligence under these circumstances would be considered as concurring and contributing with defendants' negligence in, together, being the proximate cause of any injury sustained by plaintiff, if plaintiff was thrown out by the driving upon the bank while passing. Defendants would not be relieved from liability by this concurring negligence of Hunt, which cooperated with his own driver's producing the injury." That instruction was, in our opinion, proper.
The view of the law is ably stated in the opinion of the Court in Littlev. Hackett, 116 U.S. 366. There, the plaintiff below was injured by the collision of a railroad train with the carriage in which he was riding. The plaintiff had gone on an excursion from Germantown to Long Branch. At the latter place, having some spare time before taking the cars on his return home, he hired a carriage and directed the driver to go through a public park near the railroad station. The driver, upon receiving the order, turned the horses to go to the park, and in crossing the railroad track near the station, for that purpose, the vehicle was *Page 389 
struck by the engine of a passing train, and the plaintiff was injured. The carriage belonged to a livery-stable keeper, and was driven by a person in his employment. It was an open carriage, with the seat of the driver about 2 feet above that of the person riding. (That circumstance, however, did not in any way affect the reasoning of the court in the decision of the case.) The evidence went to show that the (606) collision was the result of the concurring negligence of the trainmen and of the driver of the carriage. The railroad company set up the defense of contributory negligence, contending that the driver's negligence was to be imputed to the plaintiff. On the trial his Honor instructed the jury as follows: "I charge you, that when a person hires a public hack or carriage which at the time is in the care of the driver for the purpose of temporary conveyance, and gives directions to the driver as to the place or places to which he desires to be conveyed, and gives no special directions as to his mode or manner of driving, he is not responsible for the acts or negligence of the driver, and if he sustains an injury by means of a collision between his carriage and another, he may recover damages from any party by whose fault or negligence the injury occurred, whether of that of the driver of the carriage in which he is riding, or of the driver of the other; he may sue either. The negligence of the driver of the carriage in which he is riding will not prevent him from recovering damages against the other driver if he was negligent at the same time. The passenger in the carriage may direct the driver where to go — to such a park or such a place that he wishes to see. So far, the driver was under his directions; but my charge to you is, that as to the manner of driving, the driver of the carriage or the owner of the hack — in other words, he who has charge of it and has charge of the team — is the person responsible for the manner of driving, and the passenger is not responsible for that unless he interferes and controls the matter by his own commands or requirements." That instruction was sustained. In the opinion of the Court the contrary doctrine announced in the case of Thorogood v. Bryan, decided by the Court of Common Pleas, in 1849, 8 C. B., 114, is referred to and disapproved. Justice Field, who wrote the opinion of the Court, said: "The doctrine resting upon the principle that no one is to (607) be denied a remedy for injuries sustained without fault by him or by a party under his control and direction, is qualified by cases in the English courts wherein it is held that a party who trusts himself to a public conveyance is in some way identified with those who have it in charge, and that he can only recover against a wrong done when they who are in charge can recover. In other words, that their contributory negligence is imputable to him, so as to preclude his recovery for an injury when they, by reason of such negligence, could not recover. The *Page 390 
leading case to this effect is Thorogood v. Bryan." The Court further said, in Little v. Hackett, supra: "The truth is, the decision in Thorogood v.Bryan rests upon indefensible ground. The identification of the passenger with the negligent driver or owner, without his personal cooperation or encouragement, is a gratuitous assumption. There is no such identity. The parties are in the same position. The owner of a public conveyance is a carrier, and the driver or the person managing it is his servant. Neither of them is the servant of the passenger, and his asserted identity with them is contradicted by the daily experience of the world." In that opinion it is stated that in this country Thorogood v. Bryan has not escaped criticism in the English courts, and, in this country, has not been generally followed, and the cases in which it has not been followed are cited. There is
NO ERROR.
FAIRCLOTH, C. J. I concur in the dissenting opinion.
Cited: Bradley v. R. R., 126 N.C. 742 (on one point).
Overruled on rehearing: Crampton v. Ivie, 126 N.C. 894; Johnson v. R.R., 163 N.C. 444. *Page 392 
(610)