STATE v. JOHN HORACE CORRELL.

(Filed 8 October, 1947.)

1. **Homicide § 27f—Instruction held error in failing to charge upon defendant's evidence that he had abandoned fight and so notified adversary.**

The State's evidence tended to show an altercation between defendant and deceased at deceased's place of business, that defendant struck deceased, whereupon deceased ordered defendant out of his place, and that defendant declined to leave, and both men obtained pistols. Defendant's evidence tended to show that after deceased procured his pistol defendant insisted no offense was intended, that both he and his companion assured deceased they would leave and were in the act of doing so when deceased advanced in an angry manner declaring his intention to shoot to kill, and that thereupon defendant shot deceased. An instruction stating the general principle of withdrawal and the State's contention that defendant was at fault and was the aggressor up to the time of the slaying, without

submitting defendant's contention that his evidence tended to show that he had in good faith abandoned the quarrel and so notified his adversary, *is held* reversible error.

**2. Criminal Law § 53k—**

Where the court gives the State's contentions on a particular aspect of the case it is reversible error for the court to fail to give defendant's contentions arising upon his evidence upon the same aspect.

APPEAL by defendant from *Sink, J.,* at March Term, 1947, of WILKES.

Criminal prosecution on indictment charging the defendant with the murder of one Charles Baker.

When the case was called for trial, the solicitor announced that he would not prosecute on the capital charge, but would ask for a verdict of murder in the second degree, or manslaughter, as the evidence might disclose. The defendant entered a plea of not guilty.

There is evidence tending to show that on the evening of 27 December, 1946, the defendant in company with one Faye Fields drove from Caldwell County in his brother's automobile to a night club in Wilkes County. This night club, known as 40 & 8 Club, was operated by Charles Baker and his brother. After having dinner and several drinks, the defendant and his companion started home, but discovered that the automobile in which they were traveling had a run-down battery. Charles Baker and a colored boy, Thomas Graham, undertook to push the car with Baker's pickup truck, but soon discovered the car would not run under its own power. All four of them then returned to the night club. Additional drinks were suggested; Baker and Correll, who were quite good friends, engaged in a game of high dice, beginning at $5 and winding up at $80 a shot. They fell to quarreling over the game, hot words ensued, and the evidence is in sharp conflict as to what transpired thereafter. Apparently each thought the other had taken too many drinks.

The State's evidence tends to show that Correll struck Baker in the face; whereupon Baker ordered him out of his place, but Correll declined to leave. Both men obtained guns or pistols. Correll fired the one and only shot, which proved to be fatal.

The defendant's evidence tends to show that both Correll and his companion, Faye Fields, remonstrated with Baker when he got his pistol, insisted that no offense was intended, and that Correll was not angry with him. They assured him they would leave and were in the act of doing so (Correll had just "finished putting Miss Fields' coat on"), when Baker advanced in an angry manner, declared his intention to shoot to kill, aimed at Correll and was trying to get Faye Fields from between them when Correll says he "throwed up his hand, shut his eyes, and pulled the trigger." Baker was hit in the forehead and died almost

instantly.  Correll says, "I fired that shot because I was afraid—absolutely afraid he was going to kill me."

Verdict: Guilty of manslaughter.

Judgment: Imprisonment in the State's Prison for not less than 3 nor more than 7 years.

Defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Fate Beal and Jones, Bowers & Pritchard for defendant.*

STACY, C. J.  The case turns on the adequacy and correctness of the following instruction to the jury: "If the jury shall find beyond a reasonable doubt that Charles Baker came to his death as a result of a pistol shot fired by the defendant, Johnny Correll, it is necessary, in order for the prisoner to show self-defense, the killing with a deadly weapon being proven beyond a reasonable doubt, or admitted by him, he must show absence of fault on his part, and that the killing was done while he was under actual fear or had reasonable grounds to fear that his life was in danger, or that he was in danger of great bodily harm, and that it was necessary, or that it reasonably appeared to him to be necessary, to kill his assailant to save his own life, or to protect himself from great bodily harm."

Immediately following this instruction, the court continued: "The State of North Carolina contends and insists under all the facts in this case that the defendant, Johnny Correll, was not without fault himself, but on the contrary was the aggressor and was so up until the time of the slaying of Charles Baker."  At no time did the court submit to the jury for its consideration, the evidence of the defendant tending to show that he had in good faith abandoned the quarrel and had so notified his assailant, albeit the general principle of withdrawal was called to their attention.

The objection to the above instruction is, that it took from the defendant his perfect right of self-defense and overlooked the evidence which notified Baker that the defendant had in good faith quit the quarrel and was preparing to leave the club with his companion.  26 Am. Jur., 248. In this respect, the defendant says the charge contains an "aching void" as to his right to protect himself under the circumstances as they appeared to him at the time.  *S. v. Pollard,* 168 N. C., 116, 83 S. E., 167. We are constrained to hold the exception well taken in the light of the pertinent decisions heretofore rendered in this jurisdiction.  *S. v. Garland,* 138 N. C., 675, 50 S. E., 853; *S. v. Baldwin,* 184 N. C., 789, 114 S. E., 837; *S. v. Crisp,* 170 N. C., 785, 87 S. E., 511 (discusses differ-

ence between perfect and imperfect right of self-defense) ; *S. v. Kennedy,* 169 N. C., 326, 85 S. E., 42.

Speaking directly to the question here under consideration, *Hoke, J.,* in delivering the opinion of the Court in the last cited case, dealt with the matter in the following manner: "It may be well to note that the term 'quitting the combat,' within the meaning of these decisions, does not always and necessarily require that a defendant should physically withdraw therefrom. If the counter attack is of such a character that he cannot do this consistently with safety of life or limb, such a course is not required; but before the right of perfect self-defense can be restored to one who has wrongfully brought on a difficulty, and particularly where he has done so by committing a battery, he is required to abandon the combat in good faith and signify this in some way to his adversary. The principle here and the basic reason for it is very well stated in case of *Stoffer v. The State,* 15 Ohio St., 47 : 'There is every reason for saying that the conduct of the accused relied upon to sustain such a defense must have been so marked in the matter of time, place, and circumstance as not only to clearly evince the withdrawal of the accused in good faith from the combat, but also as fairly to advise his adversary that his danger has passed and to make his conduct thereafter the pursuit of vengeance rather than measure taken to repel the original assault.' "

There is evidence on the present record which called for the application of this principle. The failure to make such application, in the light of the instruction given, constitutes error which entitles the defendant to another hearing. G. S., 1-180. Having given the State's contention that the defendant was the aggressor "up until the time of the slaying," it was but meet that the contrary contention of the defendant should have been given. And so the law is written. *Messick v. Hickory,* 211 N. C., 531, 191 S. E., 43. "When the judge assumes to charge, and correctly charges the law upon one phase of the evidence, the charge is incomplete unless embracing the law as applicable to the respective contentions of each party." Second Headnote, *Jarrett v. Trunk Co.,* 144 N. C., 299, 56 S. E., 937. In this respect, the case of *S. v. Fairley,* 227 N. C., 134, 41 S. E. (2d), 88, appears to be directly in point, and would seem to be controlling here.

For the deficiency in the charge, as indicated, a new trial will be awarded.

New trial.