GREGORIO JUAREZ-MARTINEZ v. DONALD E. DEANS

No. 9110SC729

(Filed 5 January 1993)

**1. Venue § 2 (NCI3d) — motion for change of venue denied — residence of plaintiff — convenience of witnesses**

There was no error or abuse of discretion when defendant's motion for a change of venue in a civil assault action was denied. Although defendant contended that plaintiff was not a resident of Wake County when the action was filed, plaintiff was in fact residing in Wake County when he filed the action, even though he had been a resident for only four

JUAREZ-MARTINEZ v. DEANS

[108 N.C. App. 486 (1993)]

days and moved to another county the next month. There was no showing of abuse in the denial of the motion on the grounds of convenience of witnesses and ends of justice.

**Am Jur 2d, Venue § 15.**

2. **Malicious Prosecution § 19 (NCI4th)— civil assault action— malicious prosecution counterclaim—summary judgment for plaintiff**

The trial court correctly granted summary judgment in favor of plaintiff on defendant's counterclaim for malicious prosecution where defendant contended that plaintiff did not have probable cause to institute the prior prosecution for criminal assault against defendant, but defendant's own testimony reveals that he entered plaintiff's house, called his name loudly several times and poured beer upon plaintiff while plaintiff was sleeping, then hit plaintiff several times with a metal pin. Additionally, a *prima facie* case of probable cause was established because the magistrate made an "independent determination" that probable cause existed and issued a warrant for defendant's arrest.

**Am Jur 2d, Malicious Prosecution §§ 50-55, 176.**

**Malicious prosecution: commitment, binding over, or holding for trial by examining magistrate or commissioner as evidence of probable cause. 68 ALR2d 1168.**

**Necessity and sufficiency of allegations in complaint for malicious prosecution or tort action analogous thereto that defendant or defendants acted without probable cause. 14 ALR2d 264.**

3. **Assault and Battery § 3 (NCI4th)— civil assault—claim of self-defense—directed verdict for plaintiff**

The trial court did not err by directing a verdict for plaintiff on the issue of self-defense in a civil assault action where defendant's own testimony reveals that he entered plaintiff's residence, calling plaintiff's name loudly and holding a metal pin in one hand, and poured beer upon the face of the sleeping plaintiff. The only evidence of withdrawal is defendant's testimony that, after he poured the beer, plaintiff sprang from the bed and defendant jumped backwards. An act of withdrawal must be so clear that the other combatant will

know danger has passed and any further action will take the form of vengeance. Merely jumping backwards did not adequately inform plaintiff that defendant was withdrawing from the fight.

**Am Jur 2d, Assault and Battery § 158.**

**Comment note: Withdrawal, after provocation of conflict, as reviving right of self-defense. 55 ALR3d 1000.**

4. **Assault and Battery § 2 (NCI4th) — civil assault — counterclaim for assault — sufficiency of evidence**

The trial court in a civil assault suit properly directed a verdict for plaintiff on defendant's counterclaim for assault where defendant stood over plaintiff pouring beer on plaintiff's face with one hand while holding a metal pin in the other hand. A person in plaintiff's situation would feel a reasonable apprehension of apparent danger and, if plaintiff retaliated against defendant, he was entitled to do so in self-defense.

**Am Jur 2d, Assault and Battery §§ 109, 110, 158-162.**

**Danger or apparent danger of great bodily harm or death as a condition of self-defense in civil action for assault and battery, personal injury, or death. 25 ALR2d 1215.**

5. **Assault and Battery § 9 (NCI4th) — civil assault instructions — landlord-tenant relationship**

The trial court did not err in a civil assault action by instructing the jury that plaintiff and defendant were in the relationship of landlord and tenant; that defendant, as landlord, needed plaintiff's consent before entering plaintiff's house; and that a person free from fault in bringing on the difficulty who is attacked in his own home is under no duty to retreat. It was relevant and proper for the trial court to instruct that plaintiff, a tenant of defendant, had a right to be left alone and to be free from harmful or offensive contact with his person. Most of the additional instructions pertaining to landlord-tenant relationships were not necessary for resolution of the controversy but did not show favoritism and were not otherwise manifestly prejudicial.

**Am Jur 2d, Assault and Battery § 166; Trial § 1123.**

**6. Assault and Battery § 10 (NCI4th) — civil assault — punitive damages — evidence sufficient**

Plaintiff in a civil assault action clearly presented sufficient evidence to prove that he was entitled to punitive damages and the threshold test of *Hawkins v. Hawkins*, 331 N.C. 743, was met since plaintiff received an award of $20,000 in compensatory damages. The appellate court cannot substitute its judgment for that of the trial court and could not say as a matter of law that the trial court erred in denying defendant's motion for a new trial based on excessive punitive damages.

**Am Jur 2d, Assault and Battery §§ 186-193.**

**Sufficiency of showing of actual damages to support award of punitive damages — modern cases. 40 ALR4th 11.**

Appeal by defendant from judgment entered 16 October 1990 and from order entered 10 January 1991 by Judge George R. Greene in Wake County Superior Court. Heard in the Court of Appeals 14 May 1992.

Gregorio Juarez-Martinez (plaintiff) brought this action seeking damages for assault and battery after an altercation between himself and Donald E. Deans (defendant). For approximately one year prior to this altercation, defendant employed plaintiff as a migrant farmworker on defendant's Nash County farm. During this time, plaintiff and his family resided in a house which defendant provided.

On the afternoon of 15 July 1988 defendant admitted being angry because plaintiff was not working. He entered plaintiff's residence holding an eight-inch steel tractor hitch pin in his hand. After entering the house, defendant called plaintiff's name several times but received no response. Defendant then entered the bedroom where plaintiff was sleeping, picked up a bottle containing some beer from the bed-side table and poured some of the beer on plaintiff's face. After this point, the remaining facts are in dispute.

Plaintiff contends that he awakened suddenly when he felt beer splashing on his face. As he attempted to get up, defendant hit him repeatedly with the metal pin, knocking him back on the bed and inflicting injuries resulting in bleeding and a lot of pain. On the other hand, defendant asserts that he sprinkled some beer on plaintiff's face and plaintiff jumped up from the bed. At this point defendant jumped backwards and plaintiff attacked him, throw-

ing him to the floor and causing him to fear for his own safety. While being held down by plaintiff, defendant struck plaintiff with the metal pin until he was able to free himself and escape.

On 29 July 1988, plaintiff caused a warrant to be issued charging defendant with assault with a deadly weapon. Defendant was found not guilty of this charge in Nash County District Court on 10 November 1988. Thereafter, on 12 July 1989, plaintiff filed this civil action in Wake County Superior Court. Defendant answered alleging that Wake County was not the proper county for trial and moved that venue be changed to Nash County. Defendant's answer also asserted (1) defenses of affray and self-defense and (2) counterclaims for compensatory and punitive damages for assault and malicious prosecution.

On 15 February 1990, the trial court denied defendant's motion for change of venue. On 5 July 1990, the trial court granted summary judgment in favor of plaintiff on defendant's counterclaim of malicious prosecution. The trial court also granted plaintiff's motion for a directed verdict on the issue of self-defense and on defendant's counterclaim for assault. On 9 October 1990, the jury returned a verdict awarding plaintiff $20,000 in actual damages and $30,000 in punitive damages. After judgment was entered, the trial court denied defendant's motions for judgment notwithstanding the verdict and for a new trial.

*Becton, Slifkin & Fuller, P.A., by James C. Fuller, Anne R. Slifkin and Maria J. Mangano, for plaintiff appellee.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by D. James Jones, Jr. and Sheila M. Bossier; and Valentine, Adams, Lamar, Etheridge & Sykes, by Raymond M. Sykes, Jr., for defendant appellant.*

WALKER, Judge.

[1] In his first assignment of error, defendant contends the trial court erred when it denied his motion to change venue from Wake County to Nash County. Defendant makes two arguments in support of this contention.

Defendant first argues that the trial court should have granted its motion to change venue under G.S. 1-83(1) because plaintiff was not a resident of Wake County at the time the action was filed. Under G.S. 1-82, venue is proper in the county in which

either the plaintiff or the defendant resides at the time of the commencement of the suit. Plaintiff is a migrant farmworker and in June of 1989, he vacated the trailer in which he was living in Smithfield and moved in temporarily with a relative in Nash County. On 8 July 1989, plaintiff moved into a trailer in Raleigh (Wake County) and began searching for work there. While residing in Wake County, plaintiff filed the present action. In late August of 1989, with the arrival of several family members from Mexico and because of the crowded conditions, plaintiff moved back to Nash County. This evidence supports the trial court's conclusion that at the time the action was filed, plaintiff was a resident of Wake County. *See Howard v. Queen City Coach Co.*, 212 N.C. 201, 193 S.E. 138 (1937) (Traveling businessman was a resident of McDowell County where he moved his household effects and family to McDowell County from Buncombe County on 22 July 1936 and filed his action within a few days after moving. He then subsequently moved from McDowell County within 6 months).

In his second venue argument, defendant contends that his motion should have been allowed for the reasons enumerated in G.S. 1-83(2), *i.e.*, to promote the convenience of witnesses and ends of justice. It is well settled that a decision to change venue on these grounds is addressed to the sound discretion of the trial judge and will not be overturned unless there is a showing of abuse. In the present case, there has been no showing of abuse of discretion and accordingly defendant's argument is without merit.

[2] In his next assignment of error, defendant argues that the trial court erred when it granted summary judgment in favor of plaintiff on defendant's counterclaim for malicious prosecution. Summary judgment is appropriate when the moving party demonstrates that the opposing party cannot support an essential element of his claim and the moving party is entitled to judgment as a matter of law. *Dellinger v. Belk*, 34 N.C.App. 488, 238 S.E.2d 788 (1977), *disc. review denied*, 294 N.C. 182, 241 S.E.2d 517 (1978).

In order for defendant to prevail on a claim for malicious prosecution, he must prove the following: (1) plaintiff instituted the earlier proceeding; (2) maliciously; (3) without probable cause; and (4) the earlier proceeding terminated in defendant's favor. *Williams v. Kuppenheimer Manufacturing Co. Inc.*, 105 N.C.App. 198, 412 S.E.2d 897 (1992). Here, defendant's contention is directed to the third element; that plaintiff did not have probable cause

to institute the prior criminal action against him. Probable cause has been defined as "the existence of such facts and circumstances . . . as would induce a reasonable man to commence a prosecution." *Pitts v. Village Inn Pizza, Inc.*, 296 N.C. 81, 87, 249 S.E.2d 375, 379 (1978). In the case *sub judice*, the evidence adequately establishes the existence of probable cause to bring the criminal assault action notwithstanding defendant's acquittal on these charges. Defendant's own testimony reveals that he entered plaintiff's house, called his name loudly several times and then poured beer upon plaintiff while plaintiff was sleeping. Thereafter he hit plaintiff several times with a metal pin. Additionally, because the magistrate made an "independent determination" that probable cause existed and issued a warrant for defendant's arrest, a *prima facie* case of probable cause was established. *Newton v. McGowan*, 256 N.C. 421, 124 S.E.2d 142 (1962).

Defendant next assigns as error the trial court's grant of directed verdicts on (1) the issue of self-defense; and (2) defendant's counterclaim for assault. When considering a plaintiff's motion for directed verdict, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all conflicts in his or her favor. *Sharp v. Wyse*, 317 N.C. 694, 346 S.E.2d 485 (1986). Since this assignment of error poses two legal questions, each will be examined separately.

[3] As regards the issue of self-defense, defendant argues that the evidence considered in the light most favorable to him indicates he acted in self-defense when striking plaintiff and therefore the jury should have been instructed on this defense. Since the tort rules on self-defense are virtually identical to those of the criminal law, we turn to both areas of the law for guidance in resolving the present controversy. *Harris v. Hodges*, 57 N.C.App. 360, 291 S.E.2d 346, *disc. review denied*, 306 N.C. 384, 294 S.E.2d 208 (1982).

When there is evidence from which it can be inferred that a defendant acted in self-defense, he is entitled to have the jury consider this evidence. *State v. Marsh*, 293 N.C. 353, 237 S.E.2d 745 (1977). "However, the right of self-defense is only available to a person who is without fault, and if a person voluntarily, that is aggressively and willingly, enters into a fight, he cannot invoke the doctrine of self-defense unless he first abandons the fight, withdraws from it and gives notice to his adversary that he has

done so." *Id.* at 354, 237 S.E.2d at 747; *see also Griffin v. Starlite Disco, Inc.*, 49 N.C.App. 77, 270 S.E.2d 613 (1980).

Here, even when the evidence is viewed in the light most favorable to defendant, it becomes clear that defendant "aggressively and willingly" instigated this conflict. Defendant's own testimony reveals that he entered plaintiff's residence, calling plaintiff's name loudly and holding a metal pin in one hand. He then poured beer upon the face of plaintiff who was sleeping. Then, according to defendant, plaintiff awoke and attacked him. This evidence sufficiently establishes that defendant was the aggressor.

Defendant further argues that even if he was the aggressor, he is nevertheless entitled to the benefit of an instruction on self-defense because he withdrew from the conflict. We note that the surrounding facts and circumstances, and not just defendant's simple belief, constitute the determining factor as to whether defendant acted in self-defense. *State v. Randolph*, 228 N.C. 228, 45 S.E.2d 132 (1947). Here, the only evidence of withdrawal is defendant's testimony that after he poured the beer, plaintiff "sprang from the bed and I—I jumped backwards and he caught me in his grasp." An act of withdrawal must be so clear that the other combatant will know danger has passed and any further action by this other combatant will take the form of vengeance. *State v. Winford*, 279 N.C. 58, 181 S.E.2d 423 (1971). In *State v. Correll*, 228 N.C. 28, 44 S.E.2d 334 (1947), our Supreme Court was confronted with the question of whether a defendant withdrew from a conflict. There, defendant's evidence was that he and a companion were in the act of leaving the premises when the deceased threatened to kill the defendant. The defendant then shot and killed the deceased. In ruling that the defendant was entitled to have submitted to the jury the issue of whether the defendant in good faith abandoned the quarrel and notified his assailant, the Court explained:

> [B]ut before the right of perfect self-defense can be restored to one who has wrongfully brought on a difficulty, and particularly where he has done so by committing a battery, he is required to abandon the combat in good faith and signify this in some way to his adversary.

*Id.* at 31, 44 S.E.2d at 335. In reviewing the evidence in the light most favorable to defendant, we find defendant's act of merely jumping backwards did not adequately inform plaintiff that defend-

ant was withdrawing from the fight. Therefore, the trial court did not err in directing a verdict on the issue of self-defense.

[4] As regards defendant's counterclaim for assault, defendant contends plaintiff was the aggressor and therefore he has a valid action for assault against plaintiff. We conclude defèndant's argument is without merit since the evidence presented discloses that even if plaintiff attacked defendant, plaintiff was acting in self-defense.

An assault is an offer to show violence to another without striking him or her. The interest which this action protects is the freedom from apprehension of harmful or offensive contact with one's person. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981). However, a party cannot recover for assault if his opponent was merely acting in self-defense. *Evans v. Hughes*, 135 F.Supp. 555 (M.D.N.C. 1955); *see also* N.C.P.I., Civil 800.53 n.1. "[T]he right to self-defense depends upon . . . reasonable apprehension of real or apparent danger." *Lail v. Woods*, 36 N.C.App. 590, 592, 244 S.E.2d 500, 502, *disc. review denied*, 295 N.C. 550, 248 S.E.2d 727 (1978). A person may use reasonable force to protect himself from bodily harm or offensive physical contact, even though he is not put in actual or apparent danger of death or great bodily harm. *State v. Beaver*, 14 N.C.App 459, 188 S.E.2d 576 (1972); *see also State v. Anderson*, 230 N.C. 54, 51 S.E.2d 895 (1949). Under the facts of this case, where defendant is standing over plaintiff pouring beer on plaintiff's face with one hand while holding a metal pin in the other hand, a person in plaintiff's situation would feel a reasonable apprehension of apparent danger. Accordingly, if plaintiff retaliated against defendant, he was entitled to do so in self-defense and the trial court properly directed a verdict for plaintiff on defendant's counterclaim for assault.

[5] In his next assignment of error, defendant contends the trial court erred when it instructed the jury on assault and battery. Defendant objects to that portion of the instruction wherein the trial court stated that plaintiff and defendant were in the relationship of landlord and tenant; that defendant, as landlord, needed plaintiff's consent before entering plaintiff's house; and that "when a person who is free from fault and bringing on a difficulty is attacked in his own home, the law imposes upon him . . . no duty to retreat." We first note that it was both relevant and proper for the trial court to instruct that plaintiff, a tenant of defendant,

had a right to be left alone and to be free from harmful or offensive contact with his person. *See Rickman Manufacturing Co. v. Gable*, 246 N.C. 1, 97 S.E.2d 672 (1957) (a landlord does not have the right to enter upon the leased premises unless the tenant consents); *see also State v. McCray*, 312 N.C. 519, 324 S.E.2d 606 (1985) (when a person who is free from fault in bringing on a conflict is attacked in his own home, he does not have to retreat before fighting in self-defense). While we agree with defendant that most of the additional instructions pertaining to landlord-tenant relationships were not necessary for resolution of the controversy, we cannot conclude that these additional instructions showed favoritism by the trial court or were otherwise manifestly prejudicial to defendant. An instruction is not erroneous if it assumes an uncontroverted fact or one which has been conclusively proved. *See Crampton v. Ivie*, 124 N.C. 591, 32 S.E. 968 (1899).

[6] In his final assignment of error, defendant contends that the trial court erred in denying his motion for a new trial because the award of punitive damages was clearly excessive. Under Rule 59, a new trial may be granted if there exists "excessive damages . . . appearing to have been given under the influence of passion or prejudice." However, the trial court's discretionary denial of a new trial may be reversed only if a manifest abuse of discretion is shown. *Worthington v. Bynum and Cogdell v. Bynum*, 305 N.C. 478, 290 S.E.2d 599 (1982). There is not a precise definition of what constitutes an abuse of discretion in refusing to grant a new trial, rather an "abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an abuse bearing that heavy burden of proof." *Id.* at 484-485, 290 S.E.2d at 604.

Punitive damages are not awarded as compensation. As the name clearly implies, they are awarded as punishment due to the outrageous nature of the wrongdoer's conduct. *Cavin's, Inc. v. Atlantic Mutual Insurance Co.*, 27 N.C.App. 698, 220 S.E.2d 403 (1975). Because these damages are awarded to punish a defendant, the jury is allowed to consider the circumstances of a defendant's conduct as well as his or her financial position. *Carawan v. Tate*, 53 N.C.App. 161, 280 S.E.2d 528 (1981), *modified and affirmed*, 304 N.C. 696, 286 S.E.2d 99 (1982). In regards the amount of punitive damages awarded, this "rests in the sound discretion of the jury although the amount assessed is not to be excessively disproportionate to the circumstances of contumely and indignity present

in the case." *Id.* at 165, 280 S.E.2d at 531. Our Supreme Court recently upheld an award of $25,000 in punitive damages where neither compensatory damages nor nominal damages were recovered. *Hawkins v. Hawkins*, 331 N.C. 743, 417 S.E.2d 447 (1992). Under *Hawkins*, punitive damages may be awarded if the plaintiff is entitled to recover at least nominal damages; the fact that plaintiff did not actually receive any nominal damages is not determinative.

In the present case, the plaintiff clearly presented sufficient evidence to prove he was entitled to an award of punitive damages. The *Hawkins* threshold test for awarding punitive damages has also been met since plaintiff received an award of $20,000 in compensatory damages. We cannot now substitute our judgment for that of the trial court; we can only strictly review the record to determine whether the trial court abused its discretion. When the record is viewed in this light, we simply cannot say as a matter of law that the trial court erred in denying defendant's motion for a new trial.

We have reviewed defendant's remaining assignments of error and we find no merit in them. For the reasons stated, the decision of the trial court is

Affirmed.

Judges LEWIS and WYNN concur.