JAMES SEMON and wife, ROXANNE SEMON, Plaintiffs
v.
J.C. DOZIER, and wife, SHIRLEY DOZIER, Defendants
No. COA07-1460
North Carolina Court of Appeals
Filed June 3, 2008
This case not for publication
The Lovins Law Firm, P.A., by Shannon Lovins, for plaintiffs-appellees.
William E. Loose, for defendants-appellants.
WYNN, Judge.
Defendant Shirley Dozier appeals the trial court's judgment entered upon a jury's verdict finding she had maliciously prosecuted Plaintiff James Semon. Upon our review, we hold that Mr. Semon presented sufficient evidence as to each element of his claim for malicious prosecution and that the jury did not abuse its discretion in fixing the amount of punitive damages at forty thousand dollars. Accordingly, we find no error in the trial court's orders.
In March 2003, Plaintiffs James and Roxanne Semon purchased property at 56 Short Street in Asheville, North Carolina, for$48,000 as part of a partition sale executed by Buncombe County. Ms. Semon testified that the property needed a lot of work, as it had been empty since 2000 and was b asically uninhabitable. Three of the tenants who rented the property prior to the Semons' purchase stated that they paid rent to Rose and Samuel Cohen; did their own maintenance of the property, including mowing the lawn; and parked regularly in the vacant adjoining lot without any problems.
Shortly after the Semons bought the property, Asheville Police Officer Mack Creson came to see Mr. Semon and informed him that, "[Ms. Dozier] had claimed that she owned th[e] property." After Mr. Semon showed Officer Creson his deed to 56 Short Street, Officer Creson did his own title search and came back a couple of days later to tell Mr. Semon that he did own the property. According to Officer Creson, he also informed Ms. Dozier that "Mr. Semon owned [the property] and if she does have [a deed to the property] . . . that this was a civil matter. That there was nothing else the police department could do. . . . [The police] could not make [Mr. Semon] move the dumpsters and stuff, and that [the Doziers] needed to handle it in a civil matter." Officer Allen Dunlap likewise testified that he had spoken to Ms. Dozier and said much the same thing to her several times as to the dispute being a civil, not criminal, matter.
Both of the Semons testified that they put up a silt fence during the renovations of the property, as required by city ordinance, but the fence was twice taken down. When they went tospeak to Ms. Dozier about it, they stated that she cursed at them and called their daughter a "dirty little whore." The Semons asserted that Ms. Dozier called the police about the Semons on more than one occasion, and that Ms. Dozier claimed in August 2003 that she was "in fear of [sic] [her] life" when she pulled up in her car while Mr. Semon and a workman were at the 56 Short Street property. Ms. Dozier subsequently swore out a warrant against Mr. Semon and had him arrested for trespassing on the Doziers' empty lot adjacent to the 56 Short Street property. However, the Assistant District Attorney in Buncombe County eventually dismissed the charges as "an inappropriate expenditure of the State's resources . . . to prosecute it criminally. . . . [I]f there was some sort of case, . . . it would be more appropriate for a civil court." Mr. Semon unequivocally denied being on the Doziers' empty lot adjacent to the 56 Short Street property on the date of the alleged trespassing.
Contrary to the other testimony, Ms. Dozier stated that the 56 Short Street property was vacant from 1997 until 2003 and that she had regularly mowed the lawn there, posted a "No Trespassing" sign, and paid taxes on the property. Ms. Dozier contended that she had tried to get the tenants at 56 Short Street to pay rent to her and her husband instead of to the Cohens. However, each of the former tenants who testified denied any knowledge that there was a dispute as to the ownership of the 56 Short Street property ownership or where the rent should be paid. At trial, Ms. Dozier alleged that Mr. Semon "threatened [her] kids" and that he told a backhoeoperator, "If she tries to stop you, run over her," which was why she had felt in danger for her life.
According to Ms. Dozier, she swore out the warrant to have Mr. Semon arrested for trespassing on 2 October 2003, when he walked across her property with a gas company meter man. Although Ms. Dozier stated at trial that she had no ill will toward Mr. Semon, she admitted under cross examination that she had said in her deposition that she did not like him. Also on cross examination, Ms. Dozier conceded that she had never been inside the property at 56 Short Street, collected rent from there, paid utilities bills for there, nor made any repairs there. However, she claimed that the former tenants were lying as to the maintenance of the property. Ms. Dozier acknowledged that she had been repeatedly informed that the property dispute with the Semons was a civil matter, but admitted that she continued calling the police anyway because she believed it to be criminal trespassing.
After the criminal charges against Mr. Semon were dismissed, the Semons filed a complaint against the Doziers for slander of title, abuse of process, malicious prosecution, defamation, and punitive damages, as well as an action for injunctive relief to quiet title. At the close of the Semons' evidence at trial, the trial court dismissed the claims for abuse of process and defamation, as well as the claim for malicious prosecution against Mr. Dozier, but allowed the claims for slander of title against both Doziers and for malicious prosecution against Ms. Dozier to go to the jury. Following deliberations, the jury returned a verdict finding that the Semons had superior title to the 56 Short Street property and that the Doziers did not hold title by adverse possession. The jury further found that Ms. Dozier had maliciously prosecuted Mr. Semon, entitling him to $2,500 in compensatory damages and $40,000 in punitive damages. Ms. Dozier then filed a Rule 50 motion for judgment notwithstanding the verdict, arguing that the trial court should have granted a directed verdict to Ms. Dozier on the malicious prosecution claim and that the punitive damages were excessive and unreasonable. The trial court denied the motion and entered judgment in full on the jury's verdict, and also ordered costs to be paid by Ms. Dozier.
Ms. Dozier now appeals, arguing that the trial court erred by (I) failing to dismiss the claims for malicious prosecution and punitive damages, or to deny her Rule 50 motion for judgment notwithstanding the verdict; and (II) failing to strike, set aside, or limit the award of punitive damages.

I.
First, Ms. Dozier contends that the trial court erred by failing to dismiss the claims for malicious prosecution and punitive damages and by denying her Rule 50 motion for judgment notwithstanding the verdict, as the Semons did not present sufficient evidence as a matter of law to prove the elements of the claims. We disagree.
For both the denial of a motion for directed verdict and the denial of a motion for judgment notwithstanding the verdict, thisCourt considers
whether upon examination of all the evidence in the light most favorable to the non-moving party, and that party being given the benefit of every reasonable inference drawn therefrom and resolving all conflicts of any evidence in favor of the non-movant, the evidence is sufficient to be submitted to the jury. . . . We apply de novo review to both a trial court's denial of a motion for directed verdict and denial of a motion for judgment notwithstanding the verdict. [Either type of motion] should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim.
Denson v. Richmond County, 159 N.C. App. 408, 411-12, 583 S.E.2d 318, 320 (2003) (internal quotations and citations omitted). Moreover, to make out a claim for malicious prosecution, a plaintiff must show "(1) defendant initiated the earlier proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff." Best v. Duke Univ., 337 N.C. 742, 749, 448 S.E.2d 506, 510, reh'g denied, 338 N.C. 525, 452 S.E.2d 807 (1994).
Here, the record shows that the Semons presented ample evidence as to each of these elements to allow the claim for malicious prosecution to go to the jury. There is no dispute that Ms. Dozier swore out the warrant against Mr. Semon for trespassing. Further, the jury heard extensive testimony about a pattern of harassing behavior by Ms. Dozier of the Semons over a six-month period, including her contacting the police on more than one occasion when the jury might reasonably have inferred that she had no grounds to do so. This evidence was more than sufficient toallow the jury to conclude that Ms. Dozier acted with malice in swearing out the warrant.
Additionally, given that Ms. Dozier's credibility was impeached more than once during her testimony, the jury might have reasonably found that she did not, in fact, see Mr. Semon on her property on 2 October 2003, the date of the alleged trespassing, and instead have believed his testimony that he was never on the property on that date. As such, the evidence was sufficient for the jury to conclude that Ms. Dozier did not have probable cause to swear out the warrant against Mr. Semon and instead did so out of malice. Finally, given that the charges were dismissed, the proceedings did terminate in favor of Mr. Semon.
Because we find that the Semons presented sufficient evidence as to each element of malicious prosecution, we conclude the trial court did not err by allowing the claim to go to the jury. As Ms. Dozier's argument concerning punitive damages relies upon our finding insufficient evidence of malicious prosecution, we likewise find that the trial court did not err by sending that claim to the jury. These assignments of error are overruled.

II.
Next, as to the award of punitive damages, Ms. Dozier argues that the $40,000 award is unreasonable and excessive relative to the $2,500 in compensatory damages. We disagree.
In general, the amount of punitive damages "rests in the sound discretion of the jury although the amount assessed is not to be excessively disproportionate to the circumstances of contumely and indignity present in the case." Juarez-Martinez v. Deans, 108 N.C. App. 486, 495-96, 424 S.E.2d 154, 160 (quotation and citation omitted), disc. review denied, 333 N.C. 539, 429 S.E.2d 558 (1993). The General Assembly has also limited by statute the amount that may be recovered, such that any punitive damages award "shall not exceed three times the amount of compensatory damages or two hundred fifty thousand dollars ($250,000), whichever is greater." N.C. Gen. Stat. § 1D-25 (2005). Significantly, one stated purpose of punitive damages is "to deter the defendant and others from committing similar wrongful acts." Id. § 1D-1
In the instant case, the jury heard testimony from both of the Semons that Mr. Semon's arrest had been difficult to deal with and had negatively affected their lives. Moreover, Mr. Semon was forced to turn himself into police and to hire and retain an attorney through three court appearances. The tenant who lived at 56 Short Street and paid rent to the Semons further testified that he elected not to renew his lease because of the difficulty of dealing with the Doziers and the stress of ensuring he never touched their property in any way. Although the punitive damages relate only to the specific arrest and malicious prosecution of Mr. Semon for trespassing, the jury did hear testimony about Ms. Dozier's pattern of harassment.
In light of this testimony, we discern no abuse of discretion in the jury's award of $40,000 in punitive damages, an amount well within the statutory limits and one perhaps designed for its possible deterrent effect on Ms. Dozier's behavior in the future. Affirmed.
Judges ELMORE and ARROWOOD concur.
Report per Rule 30(e).